[Civ. No. 16159.   First Dist., Div. One.   Dec. 27, 1954.]

STEPHEN LOMBARDI, Appellant, v. LORETTA TRAN-
CHINA, as Executrix, etc., Respondent.

Ferrari & Ferrari for Appellant.

James L. Minnis, Jr. and Cosgriff, Carr, McClellan &
Ingersoll for Respondent.

WOOD (Fred B.), J.—In this action against the executrix of the will of Candida Lombardi upon a claim for $2,800, the trial court found that ''although the plaintiff did advance the sum of $2,800.00 to his father, Sebastian Lombardi, to pay off an obligation upon which his mother, Candida Lombardi, was jointly liable, the said decedent Candida Lombardi never agreed to repay said loan out of her own funds and property and plaintiff's right to recover or any obligation he may have had against his mother is now barred by the statute of limitations,'' specifying sections 339, subdivision 1, and 360 of the Code of Civil Procedure. The evidence supports these findings, contrary to plaintiff-appellant's contentions.

Two parcels of land in San Joaquin County, known to the parties as the Tracy ranch, stood in the name of Sebastian Lombardi as sole owner. In 1933 he borrowed $5,700, secured by deeds of trust on these two parcels. His wife Candida signed the notes with him and joined in the execution of the deeds of trust.

By September, 1937, the unpaid balance of this debt amounted to $2,800. Plaintiff went with his father to the office of the obligee, paid the amount due, and received and retained in his own possession the cancelled notes and the deeds of reconveyance. Candida was not present upon that occasion and there is no evidence that she was at the time aware of this transaction. This supports the finding that she made no express promise to repay plaintiff. At most it would support (defendant concedes it does support) an implied promise, an obligation imposed by law, to repay. Subsequent events bear out this view of the situation.

From the time plaintiff made this $2,800 advance until about April, 1941, checks for gas royalties accruing from time to time in respect to the Tracy ranch, were delivered or mailed to plaintiff. Until March 21, 1939, plaintiff cashed these checks and kept the proceeds, amounting to $982.69, which he treats as a credit in part payment of his $2,800 claim. Sebastian died early in 1941. In April, 1941, Candida, executrix of Sebastian's will, caused the mailing of the gas checks to plaintiff to be discontinued. Upon that occasion, Candida told her attorney that plaintiff had been paid long ago; hearsay evidence, but it went in without objection. The fact that plaintiff did not cash the gas checks which he received after March, 1939, lends support to Candida's statement. In 1947, as the result of a title search incident to a proposed sale of the Tracy ranch, Candida's attorney discovered the

lack of a reconveyance of record. Accordingly, he obtained deeds of reconveyance and had them recorded. He had no knowledge that similar deeds had been previously issued nor is there evidence that Candida knew of the deeds first issued or that plaintiff had them. Later, Candida sold the ranch. Defendant testified, without objection, that her mother Candida told her there was nothing due Steve. Neither in Sebastian's will nor in Candida's was there any reference to this claim. Also, plaintiff did not present this claim during the probate of his father's estate. Indeed, during that probate proceeding he bought 15 shares of bank stock at $100 per share, paying the executrix, Candida, cash in full, without any offset or credit against the claim here involved. Neither Candida's attorney nor her executrix was aware of plaintiff's claim until asserted by him after Candida's death. She died in November, 1951.

Thus far there is no evidence of an express promise by Candida to repay; some evidence that plaintiff has been fully repaid, and no evidence of any fact that would toll the statute of limitations. ■ Plaintiff attaches some significance to testimony of his son, Stephen, and his brother, August. The son said that in 1948 or 1949 he heard Candida tell plaintiff ''not to worry about the money that was due my father, as soon as she had a few debts straightened out, she would straighten it out with him.'' The brother testified. concerning a conversation between plaintiff and Candida a year or so before the latter's death: ''Well, Steve claimed that he had the money coming. I don't know the exact amount, but my mother said that she would pay him when she was able to.'' That was not sufficient to toll the statute or to start it running anew, because the ''acknowledgment or promise'' was not ''contained in some writing, signed by the party to be charged thereby.'' (Code Civ. Proc., § 360.)

■ Plaintiff would construe these conversations as evidence of a promise made in the beginning (1937) ''to pay when able.'' But the trier of the facts did not so view this testimony. Nor was he required to do so, especially in the absence of evidence that Candida at the time of plaintiff's payment made any promise of any kind in respect to its repayment.

■ The obligation to repay which the law imposed upon Candida under the circumstances described was one which became immediately due and payable. (See cases collected in 16 Cal.Jur. 523, Limitation of Actions, § 122.)

That started the two-year statute running in September, 1937, this being an obligation ''not founded upon an instrument of writing.'' (Code Civ. Proc., § 339, subd. 1.)

It is unnecessary to consider additional grounds urged by defendant in support of the judgment, which for the reasons indicated, must be affirmed.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.