[Civ. No. 5435. Fourth Dist. Jan. 15, 1957.]

FRANK W. O'NEILL, Appellant, v. ANN F. O'NEILL, Respondent.

Charles E. Burch, Jr., for Appellant.

Davies & Burch and Robert B. Burch, Jr., for Respondent.

MUSSELL, J.—On January 3, 1956, plaintiff filed this action for annulment or divorce, and to set aside a grant deed by which he had conveyed a house and lot to defendant before the marriage. The defendant, in addition to her answer, filed a cross-complaint in which she sought a divorce from the plaintiff, together with alimony and attorney's fees. The trial court in its judgment denied an annulment of the marriage; denied plaintiff a constructive trust on the property involved; adjudged it to be the sole and separate property of the defendant; and ordered plaintiff to pay defendant $2,800 alimony and attorney's fees in the sum of $1,000. Each of the parties was granted a divorce.

Plaintiff appeals from that portion of the judgment denying the relief sought by plaintiff of imposing a resulting trust upon the real property involved and that portion of the judgment awarding defendant alimony and attorney's fees.

Plaintiff, who had been an automobile dealer in Connecti-

cut, sold his business and came to California in 1954. He had inherited from the estate of one Addie Maxwell securities of the approximate value of $350,000, a home in La Jolla, California, of the approximate value of $40,000, and other real and personal property. The annual income from the securities was approximately $17,000.

Plaintiff first met defendant in La Jolla in January, 1955. He was then living in the house involved with his mother and his 9-year-old daughter by a previous marriage. Defendant had obtained a divorce from her husband, Dr. Simonds, and was living with her three children, two boys, aged 4 and 8 years, and a girl, aged 6 years. Defendant was receiving from her former husband the sum of $50 per month for the support of each of her children and the further sum of $110 per month alimony. Plaintiff and defendant first became engaged to marry in June, 1955, and on or about October 10, 1955, the final agreement to marry took place. Defendant was then in New York and plaintiff in San Diego. They had a long telephone conversation in which the details of the marriage were discussed and the date therefor was set for October 22, 1955. On October 12, 1955, plaintiff went to his attorney in La Jolla and had him prepare and acknowledge a grant deed to the property involved. Plaintiff was named as grantor therein and Ann F. O'Neill as grantee. Plaintiff took the deed with him to New York, and a few minutes before the wedding on October 22, 1955, Mr. Fox (defendant's father) came to plaintiff's room and handed him a wedding present from the defendant. Plaintiff handed the deed involved to Mr. Fox and told him to take it to the defendant. Fox gave the deed to defendant while she was dressing for the wedding and, with her permission, took the deed to San Diego, had it recorded, and mailed it to the defendant.

Upon their return to La Jolla, plaintiff and defendant and the four children moved into the house which was described in the deed. Plaintiff and defendant were unable to live together harmoniously and this action was filed on January 3, 1956.

The principal question for our determination is whether the evidence is sufficient to support the trial court's judgment refusing to set aside the deed in question.

There is a conflict in the evidence relating the circumstances surrounding the execution and delivery of this deed. Defendant testified that she first knew that defendant had deeded the property to her just prior to the marriage; that plaintiff had not discussed with her the matter of putting the house in

her name and it came as a complete surprise to her; that there was no discussion of the deed and she never heard of it until her father handed it to her while she was dressing for the wedding; that after the deed had been delivered to her, she and plaintiff had a discussion about it and plaintiff told her that he wished he could have given her more but the tax situation would not permit it. Plaintiff testified that he never intended the property to be a gift and that the conveyance was to vest title in his wife for a home for the both of them. However, he further testified that no definite agreement had been reached in respect to the execution of the deed and that it was purely a voluntary act on his part; that he told his attorney that he wanted the home put in his wife's name "because there was so—so much doubt in her mind as to what would occur if it were mine and I just wanted to make it emphatically not mine."

On cross-examination plaintiff was asked the following questions and gave the following answers:

"Q. All right. Now, you have spoken about an understanding that you had with her about this property. You tied no strings on to the gift or on to the transfer of title to Mrs. O'Neill in your discussions or understanding with her, did you? A. Why should I? I expected to be married a long time.

"Q. You didn't tell her or have an understanding to the effect that you would deed her the property if she would marry you? A. Never.

"Q. You expected to give her a sense of security by transferring the title to the property to her name, did you not? A. I did not. The security, I should think, would be obvious. You don't have to deed over property for that. I think that—well, I have covered this thing. I have turned the property in her name for one purpose and one purpose only. She and I understood that purpose.

"Q. Do you—did you understand, at the time you signed the deed, this particular difference between a deed and a will, that a will can be changed any time before your death, but a deed operates upon execution and delivery; did you understand that? A. Look, I wasn't born yesterday. I know that I turned the property over to my wife."

Frank Fox testified that approximately 20 minutes before the wedding "I handed Frank the watch which was in a package. Frank reached in his pocket. I said, 'This is a gift from Ann. She can't give it to you. She is dressing.' Frank

reached in his pocket and handed me a paper and I said, 'What is it?' He said, 'It's a deed to the house.' I said, 'Well, Frank, I think that is perfectly lovely. I think it's wonderful'; and, I did. He said 'Well, Ann has always talked about wanting a home of her own,' and he said, 'I want her to have this.' ''

The trial court found, among other things, that there was no fraud practiced by defendant upon plaintiff; that on October 12, 1955, plaintiff, as grantor, executed a grant deed to defendant, as grantee, of the real property involved and said deed was delivered to defendant with an intention on the part of plaintiff to give it effect on October 22, 1955, prior to the marriage of the parties; that

"3. Said deed so made, executed and delivered, was intended by plaintiff as a gift from plaintiff to defendant, and neither the making, execution nor delivery thereof was based upon any consideration; nor was it made, executed or delivered pursuant to any prior agreement or understanding on the part of the defendant.

"4. Defendant did not and does not hold said real property in trust for plaintiff and defendant, or in trust for plaintiff, or in trust at all.''

The questions whether the deed was intended by plaintiff as a gift to defendant, whether it was executed and delivered pursuant to any prior understanding or agreement of the parties, and whether defendant held the property in trust for plaintiff and defendant were questions of fact for the trial court and its determination cannot here be disturbed since there is substantial evidence in support of its findings and judgment.

Plaintiff contends that "The law applicable to the substantial evidence requires imposition of resulting trust upon the real property involved and equal division thereof between the parties." He states that the relationship between the parties was confidential from the time they were engaged and that antenuptial agreements and settlements must be fair, equitable and reasonable. In this connection he cites *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116, 122 [140 P.2d 31], in which it is stated that the basis of the confidential relationship exception is that under section 2224 of the Civil Code the equity courts will prevent one person who is in a confidential relation with another from becoming unjustly enriched by reason of a breach of the trust, and that the cases are clear that where there is some sort of a status between

the grantor and the grantee, and confidence is imposed, a constructive trust will be imposed. (*Orella* v. *Johnson,* 38 Cal. 2d 693 [242 P.2d 5], is also cited. These cases do not support plaintiff's contention. In the Orella case the court said:

"If a grantor conveys property to another in reliance on the oral promise of the latter to hold the property in trust for the grantor or a third person and the grantee subsequently repudiates the trust, it is settled that a constructive trust may be enforced against the grantee if the conveyance was induced by fraud or if there was a confidential relationship between the parties. . . . Such trusts are enforced under the provisions of section 2224 of the Civil Code that 'One who gains a thing by fraud . . . is . . . an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' "

In the instant case the court found that there was no agreement or understanding on the part of the defendant and plaintiff with respect to the conveyance and that there was no fraud practiced by the defendant. Since these findings are supported by substantial evidence, there was no fiduciary duty arising out of a confidential relationship between the parties.

It is contended that plaintiff would not have turned over his only home to defendant, omitting the furniture, as a complete gift when he expected to continue to live there with the defendant. This argument is without merit. (*Kimbro* v. *Kimbro,* 199 Cal. 344, 348 [249 P. 180].) ■ Moreover, the trial court was not required to accept as true the testimony of plaintiff, even if uncontradicted, and, as is said in *Lombardi* v. *Tranchina,* 129 Cal.App.2d 775, 780 [277 P.2d 936]:

"When a trial court has declared a deed ' "' . . . *to be just what it purports to be, an appellant . . . can not expect a reversal unless the evidence is almost overwhelmingly the other way* . . .' "' (*Spaulding* v. *Jones, supra,* 117 Cal.App. 2d 541, 545.) In such a case the determination of the trial court 'in favor of either party upon conflicting or contradictory evidence is not open to review on appeal.' (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583].) "

■ Plaintiff attaches importance to the remarks of the trial judge made after an attempt to effect a settlement with respect to the home involved. The remarks of the court indicated that there was no intention on the part of plaintiff to make a gift of the property and that the proper thing to do was to return it to plaintiff with an adequate award to defendant. However, in its final remarks, the court stated

that defendant had made an unconditional grant deed to his wife; that it, the court, could not "do anything in view of the record but go right down the middle and decide the facts as honestly as I can because, after all, maybe what is legal is fair"; and that an analysis of the evidence "fails to show me any adequate proof to justify a decision interfering with her title to this property." These remarks of the trial court cannot be considered for the purpose of impeaching the findings and judgment. (*People* v. *One 1951 Ford Sedan,* 122 Cal.App.2d 680, 683 [265 P.2d 176].)

The court found that the deed was intended as a gift from plaintiff to defendant and that "defendant is at present without funds with which to support herself or pay attorney's fees herein. Upon the marriage of the parties the defendant gave up employment which she might have had, from which she would have earned the sum of $4,100 per year; and at said time plaintiff relinquished alimony which she was then receiving in the amount of $1,320 per year." We find no abuse of discretion in the award of alimony and attorney's fees in the circumstances shown by the record. It appears therefrom that defendant was without funds with which to support herself or pay attorney's fees. The award of alimony was based on the court's reasoning that defendant would be able to obtain another teaching position in about seven months and that the lump sum awarded would be a reasonable amount for her support during that time. Where a divorce is granted to both parties, alimony may be awarded to either party. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 874 [250 P.2d 598].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.