GENEVIEVE KJAR, appellant, v. JOHN KJAR, appellee.

No. 52598.

(Reported in 154 N.W.2d 123)

NOVEMBER 14, 1967.

Ralph L. Powers and Henry Wormley, of Des Moines, for appellant.

Joe Coppola and William J. Trout, of Des Moines, for appellee.

LARSON, J.—The sole issue presented by this appeal is the propriety of the award provisions in a decree of divorce in favor of the plaintiff.

After a marriage lasting approximately one year and three months, on September 30, 1966, the trial court granted Genevieve Kjar a divorce from John Kjar on the ground of cruel and inhuman treatment. Both parties had been previously married and their respective spouses were deceased. Plaintiff, 51 years of age, had three children from a previous marriage, but only a daughter, Jennifer, age 15, lived with these parties. The defendant, 46 years of age, had four children from a previous marriage, three being minors. Two of these children, Brian, age 14, and Nancy, age 11, also resided with them.

No issue was raised as to the correctness of the granting of a divorce in favor of the plaintiff, and the facts and circumstances revealed by the record were for the purpose of showing the alleged injustices done by the defendant to obtain his freedom from this marriage. Although the conduct of the offending party is one of the factors to be taken into consideration in fixing a just and fair award to be granted to the offended party, it is not controlling.

In its decree the trial court awarded plaintiff a lump sum payment of $1500 in full of all of her rights growing out of this marriage, provided that each party retain the personal property already divided, and gave the defendant the 1965 Ford registered in his name that was possessed by plaintiff.

Plaintiff contends this amount was too small and failed to take into consideration her losses, including her pension rights valued at about $15,000, forever lost when she married the defendant. We have carefully examined the record and, after analysis of plaintiff's financial situation and defendant's earning power, assets, and existing financial obligations, believe the trial court's decree should be affirmed.

I. It is well established in this jurisdiction that in determining the amount of alimony to which the wife may be entitled, it is not only the wife's necessity, but also the husband's ability to pay, that the court must consider. In making this determination we have often said the factors that must be taken into consideration are the parties' respective age, health, future prospects, contributions to joint accumulations, existing financial obligations, obligation to children, earning capacity, past conduct, length of the marriage, and other pertinent facts that might aid the trial court in reaching a just and equitable result. Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 698, 145 N.W.2d 456, 464; Cole v. Cole, 259 Iowa 58, 60, 143 N.W.2d 350, 351; Brannen v. Brannen, 237 Iowa 188, 21 N.W.2d 459; Nelson v. Nelson, 246 Iowa 760, 68 N.W.2d 746.

Although it is not clear from the court decree whether the award to plaintiff was alimony or a property settlement, we are satisfied it includes both. We note that plaintiff does not contend she contributed monetarily to the joint property accumulation.

Plaintiff testified that when she and defendant were married, at his suggestion she sold her home in Council Bluffs, Iowa, at a $950 loss, and gave her 1962 Chevrolet, valued at $1500, to her son Jeff. At that time defendant bought a 1965 Ford for her use.

It appears from the record that plaintiff, in her own right, owns an apartment house, partly furnished, insured for $10,500

and worth about $12,000, on which she owes $4000. The gross income therefrom is $255 per month. In addition to this, she had at the time of this marriage about $3500 in cash, $2000 of which came from IPERS on the decease of her former husband. She also receives approximately $135 per month for her daughter Jennifer's support, which commenced with the death of her former husband, as well as $98 per month from Social Security effective with this decree of divorce. In addition, she is capable of doing clerking and some secretarial work.

Defendant's gross income is $8800 per year, or about $600 per month net take-home pay. He also receives expense allowances from his employer, Interstate Bakery, but this does not exceed his travel expenses and car maintenance. He still owes $2600 on the automobile with which he makes his livelihood, and his monthly payments on that amount are $72. In addition, he must support his minor children and he testified that the actual living expenses for him and his minor children were $600 over his income from January to June of 1966.

According to the record, five days after their marriage the parties moved to Des Moines, Iowa, and bought a home for which the defendant made a $5000 down payment from his funds. The divorce decree requires him to sell this property and, from the proceeds, pay $1500 to plaintiff and $500 to plaintiff's attorney. The balance, after his costs, is to be retained by him. We are not advised of this amount, but after paying his counsel and costs, we can assume it left him little even if he realized all of his original investment from this sale, obviously much less than the value of plaintiff's property. It does not appear that he has any other assets of monetary value.

The trial court found the "defendant's first obligation is to support his minor children" and noted at the time of trial he was paying $50 per week for their board and room out of his take-home pay of about $125 per week. In addition, the court recognized that the defendant must furnish clothes, books, spending money, and other incidental expenses necessary to their health and comfort. From the remainder he must provide for his own food, lodging, clothing etc.

In any event, the trial court felt there was no feasible way

that defendant could pay any substantial sum in excess of that decreed. We agree. It appears to us that his present salary is sufficient only to provide for himself and his minor children, and to require a greater award would endanger his earning capacity and ability to provide for his children. Plaintiff, on the other hand, has not used her own funds and is in substantially the same financial condition as when she married defendant, with the possible exception of the pension loss.

II. The right to alimony must be determined in light of all the facts and circumstances, and of course is not mandatory. Section 598.14 of the Code, 1966, authorizes the trial court in divorce proceedings to "make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right." What is "right" requires a just determination in the light of the facts disclosed. Pfab v. Pfab, 257 Iowa 303, 132 N.W.2d 483; Blaney v. Blaney, 256 Iowa 1151, 130 N.W.2d 732; Weiland v. Weiland, 255 Iowa 477, 122 N.W.2d 837, 1 A.L.R.3d 377.

In such matters we have said that the trial court has considerable discretion and its determination will not be disturbed unless a clear abuse of that discretion is shown. Genner v. Genner, 250 Iowa 121, 92 N.W.2d 926; Call v. Call, 250 Iowa 1175, 98 N.W.2d 335; Freel v. Freel, 253 Iowa 327, 330, 112 N.W.2d 371. However, this does not mean that this court is relieved of its duty to try the case de novo. Fritz v. Fritz, 260 Iowa 409, 148 N.W.2d 392; Cole v. Cole, supra; Jensen v. Jensen, 237 Iowa 1323, 1334, 25 N.W.2d 316. We have often stated that this court gives weight to the findings of fact of the trial court, but we are not bound by them. Rule 344(f)(7), R. C. P. We recognize that the trial court saw and heard the parties and could best weigh the evidence. Each case, of course, must be determined upon its own facts. Beno v. Beno, 260 Iowa 442, 149 N.W.2d 778. Although it properly found sufficient evidence of mental cruelty here to award her a divorce, it did not find it sufficient to justify the administration of reparations for that treatment.

III. We do not condone the actions of the defendant toward the plaintiff, but we are constrained to agree with

the trial court's determination of the award. We are furnished a record that stresses the injustices done, but it does not disclose any physical abuse of plaintiff in this unfortunate matrimonial venture. It is clear the parties were not compatible and became fully aware of this fact some six weeks after marriage. It also appears that defendant was the most dissatisfied with the relationship and in subtle and cutting ways made a point of disclosing this to plaintiff. He left letters which seemed to disclose a relationship with another woman and would not sleep in the same room with plaintiff. It appears that both failed to communicate with the other, which only aggravated the differences already existing between them. Finally, at his request plaintiff commenced this action, but asked only for separate maintenance. This upset the defendant. Without counsel, he went to the office of plaintiff's attorney and, on the assurance that plaintiff would amend her petition to ask for a divorce, signed a stipulation which in essence gave to the plaintiff all their property in addition to $100 per month alimony for life. After consulting an attorney, defendant renounced the stipulation. We may observe that the obligations assumed under the stipulation would have been far beyond the defendant's ability to pay and would have had to be rejected by the court. Courts are slow to approve a stipulation that impoverishes one spouse, especially when predicated on spite and revenge by the other. There were two parties to this marriage and the plaintiff was aware of the choice she had to make. This choice involved her pension, her property, and her single status. Marriage to the defendant offered a chance of creating a happy home and a satisfactory future. Regretfully it failed.

Although the parties were acquainted before the death of their respective spouses, clearly they knew too little of the personalities and fixed traits of each other. Neither is blameless as to this failure, but defendant's disappointment gave him no cause to treat plaintiff as he did.

IV. Plaintiff seriously contends that defendant should be compelled to reimburse her for the loss of her right to a pension of some $15,000, based on $64 per month over her life ex-

pectancy of some twenty years. Plaintiff cites and relies on the case of Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450, to sustain this contention, and calls our attention to the fact that this decision was rendered after the decree herein. It is true, in that case in making an award to the injured party we considered pension rights surrendered by plaintiff when she married the defendant. However, there the factual circumstances were quite different. That marriage lasted only 54 days. The defendant was quite wealthy and the plaintiff had no property, was 60 years of age, had no visible means of support, and could not return to her former employment. There was testimony that defendant, in an effort to persuade her to marry him, said it was unnecessary for her to work, and that in reliance thereon she gave up a position she had held for many years. Under those circumstances we held a wrong was done the wife which deprived her of security at her age and, because of the husband's ability to pay, awarded her a substantial lump sum alimony. The facts here would not sustain a similar result. Here the pension of $64 per month was not the subject of any prenuptial agreement between the parties, and her loss cannot be corrected by creating a new injustice to innocent parties, i.e., defendant's minor children.

Appellant's application for attorney fees incurred in connection with this appeal is granted, and appellee is ordered to pay to appellant's attorneys the sum of $500 for such services. —Affirmed.

All JUSTICES concur except GARFIELD, C. J., and MASON and RAWLINGS, JJ., who would increase the award and therefore dissent.

GARFIELD, C. J., dissents because he would allow plaintiff at least $2500 rather than merely $1500.

MASON and RAWLINGS, JJ., join in this dissent.