[Civ. No. 25078.   First Dist., Div. One.   Jan. 22, 1969.]

SYLVIA M. COOPER, Plaintiff and Respondent, v. WILLIAM A. COOPER, Defendant and Appellant.

Lakin, Spears & Gullixson and Joseph F. Di Maria for Defendant and Appellant.

Weaver & Orr and Howard S. Burnside for Plaintiff and Respondent.

ELKINGTON, J.—Defendant William A. Cooper appeals from an interlocutory judgment of divorce entered in favor of plaintiff Sylvia M. Cooper.

William's first contention is that the trial court's

finding that each of the parties was domiciled[1] in California is unsupported by evidence. In resolving this question we of course must apply the substantial evidence rule recently reiterated in *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [56 Cal.Rptr. 141, 427 P.2d 805]. All conflicts must be resolved against William.

The record discloses that Sylvia's complaint alleged her residence in California for more than one year prior to March 8, 1966; William's answer, by failure to deny, admitted this allegation. William filed a cross-complaint for divorce, which assumes a domicile in California of either or both parties.[2] And in his pretrial statement, William expressly admitted "Residence of plaintiff for statutory period." Although such an admission in the pleadings or pretrial proceedings does not obviate the necessity of proof and corroboration as required by Civil Code section 130 (*Hamburger* v. *Hamburger,* 60 Cal. App.2d 530, 534-535 [141 P.2d 453]), it has been held that in such a case the corroborating proof need be only circumstantial (*Muther* v. *Muther,* 212 Cal.App.2d 778, 780 [28 Cal.Rptr. 200]; *Ballard* v. *Ballard,* 215 Cal.App.2d 79, 81 [29 Cal.Rptr. 803]).

We conclude that the trial court's findings of domicile of both parties are supported by the evidence and adequately corroborated. Sylvia and a corroborating witness testified without objection or cross-examination that she had been a resident of Santa Clara County for more than one year immediately prior to the commencement of the action. Obviously her domicile was sufficiently demonstrated to the court.

The evidence indicates that William was born and raised in California. He married Sylvia, an English widow, in New York in 1964, when both were in their fifties. In January 1965 he was transferred by his employer to California. His assignment was for an "indefinite period," although he "had every feeling that eventually [he] would be asked to return." He and Sylvia immediately took a year's lease on an apartment a short distance from his mother's home in Mountain View. He brought his household furnishings to California. Many times during the marriage Sylvia stated that she wished never to return to New York, and William manifested no views to the

---

[1] In the context of this case the statutory terms "residence" and "domicile" are synonymous. (*Whealton* v. *Whealton,* 67 Cal.2d 656, 660 [63 Cal.Rptr. 291, 432 P.2d 979].)

[2] Without such domicile neither party may secure a divorce. (3 Witkin, Summary of California Law (1960) p. 2618.)

contrary. After the separation he continued to refer to the place where he and Sylvia had lived as "home."

As indicated, the evidence we have outlined is substantial, and furnishes an adequate basis for the trial court's findings of residence. It becomes unnecessary to resolve Sylvia's additional contentions relating to estoppel, invited error and the equitable doctrine of clean hands which were also directed at that issue.

■ Next, William claims that the trial court erred in allowing evidence of Sylvia's income from a trust created by her deceased previous husband.

From this trust Sylvia had received approximately $516 per month. It provided that such income was to terminate upon her remarriage. The following finding, which is supported by substantial evidence, was made by the court: "That Plaintiff gave up her right to the income from the Nalder Trust for her lifetime upon her marriage to Defendant: that Defendant had full knowledge thereof, and was aware of said fact prior to the marriage of the Plaintiff and Defendant, and Defendant accepted his responsibility to support Plaintiff. That Plaintiff does not have sufficient means or income to support herself, and that Defendant has sufficient means and income to pay reasonable sums per month to Plaintiff for Plaintiff's support; that $500.00 per month is a reasonable sum under the circumstances for Defendant to pay to Plaintiff each month for her support, . . ."

The court awarded Sylvia $500 per month alimony. William makes no claim that the alimony award was excessive, recognizing that the trial court has wide discretion in such matters. He insists, however, that it was unreasonable and improper for the court to take into consideration Sylvia's loss of trust income.

By virtue of the marriage William, who had yearly income in excess of $29,000 per year, undertook the duty of Sylvia's support. (See *Mergenthaler* v. *Mergenthaler,* 69 Cal.App.2d 525, 527 [160 P.2d 121]; 3 Witkin, Summary of California Law (1960) p. 2558.) Civil Code section 139 provides: "In any interlocutory or final decree of divorce . . . the court may compel the party against whom the decree . . . is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . ." *Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249], states: "The princi-

ples which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker,* 64. Cal.App. 2d 239, 242 [148 P.2d 381].)''

The case of *O'Neill* v. *O'Neill,* 147 Cal.App.2d 596 [305 P.2d 1003], presented circumstances somewhat similar to those before us. There the wife upon her marriage gave up alimony of $1,320 per year and employment from which she earned $4,100 yearly. After a marriage lasting approximately one year the court awarded yearly alimony of $2,800. Responding to a contention that the award was unreasonable the court stated (p. 602) : '' 'Upon the marriage of the parties the defendant gave up employment which she might have had, from which she would have earned the sum of $4,100 per year; and at said time plaintiff relinquished alimony which she was then receiving in the amount of $1,320 per year.' We find no abuse of discretion in the award of alimony and attorney's fees in the circumstances shown by the record. . . .''

Here also, we find no abuse of discretion, or error, in the granting of the contested alimony award.

■ William also assigns as error certain money and property awards to Sylvia, as hereinafter stated.

First : Award of $1,000 for Sylvia's moving expenses to England. The court found that Sylvia had formed an intent, after commencement of the divorce action, to move to England. It awarded to her $1,000 ''as further support'' for this purpose. Such an allowance was obviously within the court's discretion. (See *Hall* v. *Hall, supra,* 42 Cal.2d 435, 442.)

■ Second : Award of portion of William's stock option. In December of 1964, after the marriage of the parties, and while they resided in New York, William received a stock option from his employer Sterling Drug, Inc. The option was given in consideration of his employment. It permitted him to

purchase 600 shares at $28.50 per share after two years (December 1966). As stated, the parties came to California in January 1965. The option matured after the commencement of the divorce action, but more than five months before the entry of the interlocutory decree. By this time William had established his residence in New York. The option had not been exercised. The court found that the 600 shares had increased in value, over $28.50 per share, by $8,475, and that the option was quasi-community property. William was, in effect, ordered to assign to Sylvia one-half of the option covering the 600 shares or to pay her $4,237.50 in lieu thereof.

William contends that the stock option was his separate property since he was domiciled in New York at the time it was granted and when it matured. He also insists that the option was a mere expectancy conditioned upon his continued employment, and therefore not subject to division as community property.

Civil Code section 140.5 (enacted in 1961) states: " 'quasi-community property' means all personal property wherever situated . . . heretofore or hereafter acquired: (a) By either spouse while domiciled elsewhere which would have been community property of the husband and wife had the spouse acquiring the property been domiciled in this state at the time of its acquisition.'' Civil Code section 146 authorizes the court on dissolution of a marriage to dispose of "quasi-community property'' in the same manner as community property. These sections are constitutional (*Addison* v. *Addison*, 62 Cal.2d 558, 567 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]).

Civil Code section 169.2 (enacted in 1959) provides: "*After the rendition of an interlocutory judgment of divorce* and while the parties are living separate and apart, the earnings and accumulations of the husband are the separate property of the husband.'' (Italics added.) Prior to the enactment of this section the earnings and accumulations of the husband before the *final* decree were community property. Since its adoption such property remains community (or quasi-community) until rendition of the *interlocutory* judgment of divorce. (See *Brown* v. *Barham*, 242 Cal.App.2d 696, 703-704 [51 Cal.Rptr. 718]; *Mears* v. *Mears*, 201 Cal.App.2d 408, 412 [20 Cal.Rptr. 214]; 4 Witkin, Summary of California Law (1960) p. 2722.)

It thus appears that the contested stock option was quasi-community property and that since it matured prior to the

interlocutory decree it was no longer a mere expectancy. The court therefore was empowered to assign one-half of the option, or its value, to Sylvia.

Third: Award of $1,200 representing a similar amount of community funds used by William to pay taxes on his separate income. William contends that the award should be reduced to $600 which represents Sylvia's share of the community funds in question. It must be borne in mind that Sylvia's divorce was granted on grounds of extreme cruelty. In such a case the court need not divide the community (or quasi-community) property equally. Instead, subject to the provision that Sylvia was entitled to the greater part (*Irish* v. *Irish,* 246 Cal.App.2d 705, 708 [55 Cal.Rptr. 55]), such ''property shall be assigned to the respective parties in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just.'' (Civ. Code, § 146, subd. (a).) There was no abuse of discretion here..

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 19, 1969.