509 So.2d 329 (1987)
Kathleen WRIGHT, Appellant/Cross-Appellee,
v.
Millard B. WRIGHT, Appellee/Cross-Appellant.
No. 86-22.
District Court of Appeal of Florida, Third District.
May 19, 1987.
Mark E. Pollack, Miami, for appellant/cross-appellee.
Fred E. Glickman, Miami, for appellee/cross-appellant.
Elizabeth S. Baker, South Miami, for National Organization for Women, as amicus curiae.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON REHEARING EN BANC
PER CURIAM.
The appellee moved for rehearing en banc asserting that the panel opinion, reported *330 at 509 So.2d 328 (Fla. 3d DCA 1986), is in conflict with this court's opinion in Duttenhofer v. Duttenhofer, 474 So.2d 251 (Fla. 3d DCA 1985). Despite the efforts of the panel to distinguish this case from Duttenhofer, we agree that the two cases are irreconcilable and that our en banc jurisdiction is, therefore, properly invoked. Having now reheard the matter en banc, six members of the en banc court are of the view that the panel opinion should be vacated and the trial court's judgment affirmed in its entirety.
In the present case, Mrs. Wright claims that the trial court abused its discretion in denying her alimony and certain medical expenses. Given that the parties separated after a mere eleven months and given the trial court's amply supported findings that Mrs. Wright had made no substantial contribution to the marriage, was unwilling to curtail her unexplained spending habits, and was capable of becoming gainfully employed  in essence, that she had been on an eleven-month joy ride  we quite obviously cannot say that the trial court abused its discretion when it denied her relief.
Mrs. Wright says, however, that the trial court erred by refusing to take into account, when considering if and how much alimony Mr. Wright should pay, that her marriage to him resulted in the termination of $1,000 per month alimony she had been receiving from a former husband.[1] Contrary to Mrs. Wright's position, we conclude that the trial court was entirely correct in disregarding her "lost alimony" in deciding Mr. Wright's responsibility, if any, to pay alimony to her. As was said in Duttenhofer, 474 So.2d at 253, "the power of a court to `consider any other factor necessary to do equity and justice between the parties' was not intended to encompass the consideration of premarital sacrifices." So even as the court in Duttenhofer held that the forfeiture of widow's benefits was such a non-compensable premarital sacrifice, so, too, the termination of the wife's entitlement to alimony from an ex-husband is a mere consequence of the event of the remarriage which is not to be considered in fixing the next husband's alimony obligation.
We thus adopt Duttenhofer and its reasoning, find it to be dispositive of the present case, and specifically reject the panel's view in Wright that "the forfeiture of alimony on remarriage ... is an equitable factor for the court to consider in awarding alimony." Wright v. Wright, 509 So.2d at 328.
Affirmed.
SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, DANIEL S. PEARSON and JORGENSON, JJ., concur.
FERGUSON, Judge (dissenting)
The question presented for rehearing en banc is a simple one of statutory construction.[1] Section 61.08(2), Florida Statutes (1985), is the statute in question. It provides:
(2) In determining a proper award of alimony or maintenance, the court shall *331 consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education and career building of the other party.

The court may consider any other factor necessary to do equity and justice between the parties. (emphasis added).
From the above provision the majority concludes that a trial court in deciding whether to make an alimony award is precluded, as a matter of law, from considering the fact that a wife relinquished alimony awarded in a prior dissolution of marriage as a consequence of the marriage now to be dissolved. There is no language in the unambiguous statute which can be interpreted as placing the specific limitation on the court's discretion in the matter.
In arriving at its holding the majority, of necessity, has violated the "plain meaning rule"  the most fundamental canon of statutory construction. The rule says, "if the statute is plain, the court may not go beyond it to find another meaning." Dickerson, The Interpretation of Statutes 229 (1975). This so-called exclusionary doctrine, notes Professor Dickerson, was invoked in Board of County Comm'rs of Lake County v. Rollins, 130 U.S. 662, 670, 9 S.Ct. 651, 652, 32 L.Ed. 1060, 1063 (1889), where the United States Supreme Court said:
If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and... the courts ... have [no] right to add to it or take from it.
Similarly, the Florida courts hold that when statutory language conveys an unequivocal meaning, it is neither the function nor prerogative of the courts to speculate on other constructions. Heredia v. Allstate Ins. Co., 358 So.2d 1353 (Fla. 1978). Section 61.08(2) clearly suffers no infirmity which would authorize judicial tampering. That observation ordinarily would end the dissent; however, Duttenhofer v. Duttenhofer, 474 So.2d 251 (Fla. 3d DCA 1985), review denied, 482 So.2d 348 (Fla. 1986), which is now adopted as the law in this district, must be critically examined.
Prior to Duttenhofer, no court considering an alimony question had given the statute a construction which prevented a trial judge from considering an economic loss which was occasioned by the very fact of the marriage. The parties have conceded as much. In fact all of the cases on the point, including those recognized by the majority, hold exactly opposite to Duttenhofer.
In O'Neill v. O'Neill, 147 Cal. App.2d 596, 305 P.2d 1003 (1957), the court considered the fact that the wife relinquished $1,320 per year in alimony and awarded her a lump sum alimony award even though the marriage had lasted only three months. The appellate court in Cooper v. Cooper, 269 Cal. App.2d 6, 74 Cal. Rptr. 439 (1969), also approved the trial court's consideration of lost trust income in making an alimony award. All the facts in Cooper which supported the alimony award are present in this case: (1) the wife gave up premarital income by the marriage; (2) the husband had full knowledge of the wife's forfeiture of the income prior to the marriage; (3) the husband accepted the responsibility to support the wife; (4) the wife did not have sufficient means to support herself; and (5) the husband had sufficient means to pay a reasonable sum. Cooper, 269 Cal. App.2d at 7-10, 74 Cal. Rptr. at 441-42.
In Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450 (1966), the court considered the fact that a sixty-year-old wife had forfeited *332 a pension as a consequence of the marriage and approved a $14,000 lump sum alimony award even though the parties separated after only fifty-four days. Kjar v. Kjar, 261 Iowa 334, 154 N.W.2d 123 (1967), holds that a second husband is not a guarantor of alimony lost to the wife as a consequence of a remarriage but the economic sacrifice is a factor which the court may consider in deciding whether to award alimony upon a dissolution of the latter marriage. This case lends support to the view that there is no conflict between Duttenhofer and Wright. In Kjar, the court considered the fact that the wife lost a pension as a consequence of the marriage. Alimony was denied, however, because the husband's salary was barely sufficient to provide for himself and his minor children. Finally in Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968), the Iowa court reaffirmed its earlier holdings that a wife's premarital sacrifice is a factor to consider in making an alimony determination.[2]
Merrill v. Merrill, 357 So.2d 792 (Fla. 1st DCA 1978), which the Duttenhofer majority relied upon as supportive authority, actually supports the holding of the three-judge panel in Wright. Merrill holds that a wife's sacrifice of a pension as a consequence of remarriage is not a material contribution as would support a claim to a special equity in the husband's property; nevertheless, the court recognized that a pension sacrifice is a nonmaterial contribution to the marriage. Merrill, 357 So.2d at 793. Section 61.08(2)(f) expressly requires the court to consider, for alimony purposes, nonmaterial contributions to the marriage.[3]
In concluding that the statutory power of a trial court to consider "any other factor necessary to do equity and justice between the parties" was not intended to encompass consideration of premarital sacrifices, the Duttenhofer court purported to reason by analogy from section 771.04, Florida Statutes (1983), which abolished a cause of action for breach of promise to marry. Section 771.04 bars a cause of action where a prospective spouse abandons the marriage plan before consummation. Section 61.08(2) applies to consummated marriages and specifically provides for support of one spouse by the other  where justified as a matter of fact. Because the two acts apply to entirely different situations (marriage versus no marriage) and have different underlying purposes  an important point recognized by the Duttenhofer court, Duttenhofer, 474 So.2d at 254-56  the "heart balm" act is not analogous authority.
The foregoing is a summary of all the authorities relied upon by Duttenhofer for its interpretation of section 61.08(2).
*333 In light of the court's holding on the point of law, that an economic sacrifice by the wife is not a relevant economic factor which the trial court may consider in making an award of alimony, any discussion of the facts would seem unnecessary. But the majority also seems to find merit in Mr. Wright's contention that in determining whether he should pay alimony, consideration of Mrs. Wright's lost alimony would be unfair. So more must be said about the facts.
Mrs. Wright had been previously married for twenty-three years. By a decree dissolving the first marriage she was awarded lump sum alimony payable over a ten-year period. When Mr. Wright asked Kathleen to marry him, he was aware of the condition whereby she would forsake $1,000 per month of the alimony award in the event of a remarriage. Nevertheless, and significantly, no antenuptial agreement was discussed or entered into. The marriage was terminated after only eleven months.
Mrs. Wright, a high school graduate without marketable skills, has never worked outside the home. She also suffers from a number of physical ailments which affect her ability to seek and hold gainful employment. An uncontroverted affidavit shows that without the relinquished alimony she cannot meet her ordinary living expenses.
Mr. Wright on the other hand is a healthy and wealthy airline pilot. He was not dragged to the altar under protest. Shortly after both parties were divorced from their previous spouses Mr. Wright pressed Kathleen to marry him, with an implied promise to support her, and persisted until she reluctantly agreed. One might conclude that making and breaking marriage vows is his favorite pastime. This was his fifth divorce. He knew as well, or better than Mrs. Wright, the financial commitments that follow an exchange of vows because he is paying alimony to two previous wives. Nevertheless, he did not secure the antenuptial agreement that would have placed Mrs. Wright on notice that she alone would be assuming the risk of loss in the event the marriage failed. Cf. Jackson v. Seder, 467 So.2d 422 (Fla. 4th DCA), review denied, 479 So.2d 118 (Fla. 1985). Mrs. Wright has been hurled into the proverbial "gotcha" position by this court's fashioning for the elusive Mr. Wright the equivalent of such an antenuptial agreement. He was not in need of, nor deserving of, the protection of an equity court.
Characterization of Mrs. Wright's lifestyle during the eleven-month marriage as a "joy ride" is unfair. All she did was indulge, with her husband, in the lavishness which he could afford and did provide. She had no obligation under the circumstances to be separately penurious. Focus on the lifestyle however is a redherring; the "joy ride" ended with the marriage. The question before the court for the purpose of alimony was whether the fact that Mrs. Wright lost $100,000 in alimony as a consequence of accepting Mr. Wright's marriage proposal, and is at the moment unprepared to support herself, is a relevant economic factor. Of course it is.
Duttenhofer started with an examination of a statute which, on its face, is a clear expression of legislative intent that the trial court not be limited as to the factors it may consider in fashioning an alimony award. The panel in Wright, although called upon to construe the same statute, was faced with a different issue. (See footnote 1 of dissent). A rehearing en banc was granted ostensibly to bring Wright into conformity with Duttenhofer, and perhaps for the purpose of reaching a result which the majority thinks is more equitable to Mr. Wright. In the process section 61.08(2) has undergone  improperly  a judicial rewriting.
I respectfully dissent.
HENDRY and BASKIN, JJ., concur.
NOTES
[1] Mrs. Wright had been married to this former husband for twenty-three years. Under their property settlement agreement, the former husband's obligation to pay her $2,000 per month in non-modifiable alimony survived her remarriage to and divorce from Wright.
[1] A conflict is said to exist between the panel opinions in Duttenhofer v. Duttenhofer, 474 So.2d 251 (Fla. 3d DCA 1985), review denied, 482 So.2d 348 (Fla. 1986) and Wright v. Wright, 509 So.2d 328 (Fla. 3d DCA 1986). The majority in Duttenhofer rejected the dissenter's statement of the issue and restated it as presented by the appellant, i.e., whether a wife who gives up prior financial security in consideration of marriage to a millionaire is entitled to be restored to her previous financial position through an alimony award. Duttenhofer, 474 So.2d at 252 n. 1. That is the question the court discussed and answered in the negative. Duttenhofer, 474 So.2d at 254.

The panel in Wright agreed with the proposition that the new husband is not a guarantor of the former husband's obligation but disagreed that a sacrifice made by a partner as a consequence of a marriage could not be considered by the court as a relevant economic factor in determining the propriety and amount of alimony. Wright, 509 So.2d at 328. Thus, an entirely separate question was answered in Wright.
[2] In an unsuccessful attempt to distinguish the Iowa alimony cases from section 61.08, the Duttenhofer court observes that the Iowa court placed the alimony factors into two categories  premarital and postmarital  noting that the loss of economic benefits as a consequence of marriage falls into the first category. Duttenhofer, 474 So.2d at 253 n. 3. The Iowa court did not rely on any specific statutory provision. Likewise, failure of the Florida statute to categorize and specifically identify all of the various factors is no evidence of legislative intent to exclude any particular economic factor. Further, use of the additional and expansive "any other factor" language in the statute contradicts the suggestion that the statute is a limitation on judicial discretion.

One commentator has noted that Florida, as do nine other states, allows its trial courts to consider a broad range of factors in fashioning an alimony award. Those other states with similar statutes, it is noted, are Iowa, California, New York, Georgia, Louisiana, Maryland, Oregon, Virginia, and Wisconsin. Note, Property Division and Alimony: A Survey of Statutory Limitation on Judicial Discretion, 50 Fordham L.Rev. 415, 428-29 nn. 95, 96 (1981).
[3] Duttenhofer's holding that a sacrifice of benefits as a legal consequence of remarriage is not a contribution to the new marriage conflicts with Merrill. Other Florida cases cited in Duttenhofer lend no support to the majority holding. In Mims v. Mims, 305 So.2d 787 (Fla. 4th DCA 1974), the wife brought an action in tort against the husband on grounds that the husband induced the wife to marry him with false and fraudulent protestations of love. In affirming a dismissal of the complaint, the district court noted that the chancellor could weigh the claims in determining alimony pursuant to section 61.08(2). Mims, 305 So.2d at 789-90. In Jackson v. Seder, 467 So.2d 422 (Fla. 4th DCA), review denied, 479 So.2d 118 (Fla. 1985), the court refused to set aside an antenuptial agreement whereby the wife waived any claim to be compensated for alimony lost in the event the second marriage was dissolved. In this case Mrs. Wright did not execute an antenuptial agreement.