## Ruttencutter v. Ruttencutter.

March 12, 1943.

Lawrence V. Drahman for appellant.

Benton & Benton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole issue in this case imposes upon us the unpleasant task of determining who is entitled to the custody of a boy child some seven or eight years old at the time of the trial, at which the court adjudged in favor of appellee, the mother, and from which appellant, the father, has appealed. We say the task is unpleasant, because whichever way it may be discharged our judgment possesses the potentialities of affecting the child's career for good or bad throughout its life. Hence, it is both delicate and far-reaching but which we encounter much more frequently than well regulated society and loyalty to the marriage contract would require.

The parties hereto were married—while both of them were quite young—on September 5, 1928, and the little fellow about whom this battle is waged was born on June 5, 1934. The action for divorce was filed by appellee, the wife, against appellant, the husband, in the Campbell circuit court on August 13, 1940, and in her petition she charged cruel and inhuman treatment towards her on the part of defendant for more than six months prior thereto so as to destroy permanently her peace and happiness. Defendant answered denying the ground of divorce and in another paragraph counterclaimed against plaintiff, seeking a divorce from her upon the same ground. Plaintiff also prayed for the proper orders giving her the custody of their infant child, alleging that she was a fit person to have its custody, and that defendant was not. She also asked for pendente lite alimony for the support of herself and the child—further alleging that her husband was earning $28 per week as an employee of the Crosley Radio Station in

Cincinnati, Ohio, across the Ohio river from Newport, where the parties resided.

Upon final submission (defendant introducing no evidence) the court adjudged that plaintiff was entitled to and she was granted the divorce prayed for in her petition, but further stated in the judgment: ''The question of the custody of the infant child is reserved until further orders of this court.'' That judgment was rendered on May 12, 1941, after which the parties took proof by depositions on the issue reserved by the court with reference to the custody of the child, and on January 22, 1942, the court awarded to plaintiff the custody of the child and adjudged that defendant pay to plaintiff $5 per week until the further orders of the court to meet the expenses of the child's support, and that defendant, so long as plaintiff resided within the jurisdiction of the court, should have the right to visit and be with the child ''at all reasonable times.'' However, at the time of the submission and the rendition of that judgment plaintiff had married a man by the name of Hill, who was employed at a plant doing some kind of war work in the city of St. Louis, Missouri, at a wage of $1.35 per hour. It was made to appear, however, that the particular work in which he was engaged at that time might terminate at any time, after which he would return to his home in the city of Newport in the absence of obtaining work elsewhere. From that judgment alone defendant prosecutes this appeal.

The testimony uncontradictedly shows that plaintiff was an industrious wife and housekeeper, shouldering the burdens of such positions, including cooking and other chores required and demanded of her as head of the household, and that she was an affectionate and dutiful mother to her offspring. On the other hand, the evidence taken on both of the issues supra, clearly revealed that the husband possessed a high tempered, phlegmatic, stubborn and combative disposition, which he exhibited in his household towards both his wife and his child, and which on occasions caused him to strike his wife and to unduly punish the child for alleged infraction of what he supposed to be proper conduct on its part. Such action on his part formed the basis of the sole ground relied on by the wife to obtain her divorce, which the court concluded was sufficiently proven to grant that relief, and in which conclusion we coincide without detailing the

different occasions and the specific nature and character of each instance of such indulgence on his part.

Plaintiff first separated from her husband some considerable time before the filing of her instant action, but reconciliation was made, based on certain promises by the husband, and the couple resumed their marital relation, which lasted only about one month, since defendant failed to amend his conduct and this action was later filed. After the second separation plaintiff took her child to the home of her parents in Newport, where she and it resided until her second marriage with Mr. Hill. The proof shows without contradiction that the parents of plaintiff owned a comfortable home with ample facilities to take care of plaintiff and her child, in addition to other members of their family, which were comparatively few. During that time it appears that plaintiff obtained work, the compensation of which contributed to the support of herself and child. The second husband of plaintiff is shown to be a man of high character and efficient as a laborer in his chosen field. Defendant, on the trial of the issue as to who should have custody of the child, introduced no proof whatever of his fitness for that task, either from a financial standpoint, or temperamental, or moral standpoint, nor did he attack the fitness of his wife as such custodian, save and except in one particular now to be considered.

The couple owned an automobile, and the wife in the forepart of 1940, with the consent of her husband, went to Miami, Florida, to spend the winter. While there she met a man—who was then spending his vacation in the same city—by the name of Knaube, and who had employment in some of the governmental departments in Washington, D. C. He informed plaintiff that he thought he would be able to secure for her a position in some of the departments, whereby she might earn needed compensation sufficient to furnish a greater supply of luxuries and other comforts of life which the meager salary of the husband could not provide. Knaube left Florida some two weeks before plaintiff. She met a young man —in his teens—who wanted to go to the city of Washington, and who was an expert driver of an automobile, and he agreed to and did drive plaintiff's automobile, with herself and child, from Miami to Washington. That trip was made with knowledge and consent of appellant.

Soon after arriving there plaintiff located Knaube, who assisted her in procuring temporary quarters for herself and child until it could be ascertained whether she could obtain employment. The owner of the apartment or rooming house where quarters were finally selected was Miss Anna O'Mara, who afterwards married Jack O'Neill, and at the time of the giving of her testimony in this case she was Mrs. O'Neill. Appellant introduced her as a witness and she testified that during the more or less brief time the selected quarters were occupied by plaintiff and her child, Knaube would visit the place and confer with plaintiff, sometimes, if not mostly, in her room and when the child was present therein, and that the couple reputedly passed among the occupants of her apartment as man and wife, which neither of them denied or corrected in any manner. She also testified that the various occupants of her apartment came and went to suit themselves, and, more frequently than otherwise, without her knowledge; but she denied ever witnessing any improper conduct between plaintiff and Knaube further than the above which created suspicions on her part.

Plaintiff in her testimony positively denied any such insinuated misconduct between the two, although she admitted that Knaube did visit her quarters on occasions to report to her progress or non-progress that he had made with reference to procuring work for her. After a reasonable time plaintiff despaired of securing a job and returned home. No complaints appear to have been made by defendant on account of that trip, until the little boy informed him of the visits of Knaube to the occupied quarters of himself and his mother in Washington. Upon receiving that information defendant approached his wife concerning the matter, in which it was discussed in more or less inflammatory language, but he finally concluded to overlook the incident and to continue the family relations with defendant, which he did for sometime thereafter, following which she finally left him as we have hereinbefore stated. That incident, as we have said, is the sole and only fact relied on by defendant to prove the unfitness of plaintiff to become custodian of their only child.

Section 403.070 of KRS (section 2123 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes) prescribes that pending actions for divorce or on final judg-

ment "the court may make orders for the care, custody and maintenance of the minor children of the parties," &c. It later provides that in making such orders the court should have principally in view "the interest and welfare of the children." In the case of Ridgeway v. Walter, 281 Ky. 140, 133 S. W. (2d) 748, (a contest between grandparent and guardian) it was pointed out by us that the question concerning the proper custody of infant children arises from a number of relationships— such as father and wife, guardian and parent, grandfather and parent, grandfather and guardian, and perhaps others, and that the governing principle might be different as between the various relationships of the parties. But in that (Ridgeway) opinion, and in the cases of De Long v. De Long, 271 Ky. 815, 113 S. W. (2d) 455; Mills v. Mills, 275 Ky. 221, 121 S. W. (2d) 9; Wacker v. Wacker, 279 Ky. 19, 129 S. W. (2d) 1043; Sowders v. Sowders, 286 Ky. 269, 150 S. W. (2d) 903, the principle was announced—and which has been followed by us—that the welfare of the child should receive due consideration. Likewise, that the mother—if suited to the task and all things else being equal—should be given the custody of extremely youthful children, and in making such determinations the poverty of the parties in material property forms no obstacle to their right of custody, provided they are otherwise equipped, and the welfare of the child would not be jeopardized. The judgment appealed from follows the doctrine of the listed domestic cases and others referred to in them, after giving due consideration to all of the elements governing such conclusions. Unless the testimony of the witness O'Neill should deprive plaintiff of her right of custody (and which, as we have seen, is the only reason urged for that conclusion), then the judgment is correct and should not be disturbed.

In the case of Altemeier v. Rachford, 291 Ky. 845, 165 S. W. (2d) 848, 849, there was presented to this court facts affecting the suitability of the mother for the custody of her child in a habeas corpus proceeding against the husband's parents which she instituted to obtain its custody. Her first husband, from whom she was divorced, was still living and at the time of the filing of the action she had married another husband. Upon obtaining the divorce the mother, possessing no property and having no one with whom she could place the tem-

porary custody of her child, except its grandparents, she delivered it to them for that purpose, but only temporarily, as she testified, until she became so established that she could discharge that duty herself. The defendant, or respondent, in that habeas corpus action, resisted the granting of the writ, and among other things charged the petitioner's unfitness because of alleged lascivious conduct on her part; but which we in our opinion rejected since the evidence was insufficient to establish the charge. The witnesses in that case testified to alleged acts and conduct on the part of the mother of sufficient potency to prove it as does that introduced by appellant in this case; but which was not incorporated in the Altemeier opinion as the witnesses gave it. In disposing of that ground, we said in that opinion: "There was testimony that prior to the separation, she [petitioner therein] sometimes stayed out until two or three o'clock in the morning, but she explained, without contradiction, that on these occasions she had a 'job at the ball park at the night game selling soft drinks' in order to earn money to supply her family's needs. Although it is intimated that she was too friendly with her second husband prior to her separation from her first husband, there is no testimony indicating that she bears other than an excellent reputation or that her conduct, since her second marriage at least, is not above reproach."

It is our conclusion that what was said therein exactly fits this case. Aside from what the witness, O'Neill, testified there is no testimony in the case to prove any lascivious conduct on the part of appellee; and for at least three years since that occurrence happened she has undoubtedly led an upright life, and has been entirely free from any such charge. In addition thereto, it is the policy of courts not to convict one against whom such charges are preferred, except upon most clear and convincing testimony; and especially is that true when the alleged guilty one is a mother, and to convict her would not only blacken her name, but likewise cast a shadow on the life of her offspring. The Washington witness stated no fact clearly proving appellee guilty, and following the rule above stated, the lower court held the testimony insufficient to defeat the mother's right to the custody of her infant child, and we conclude that the judgment appealed from was and is correct.

Wherefore, it is affirmed.