Paula Dugan FORSYTH, Appellee,

v.

Marvin Wayne FORSYTH, Appellant.

No. 53656.

Supreme Court of Iowa.

Nov. 12, 1969.

**112**

A. W. Bass, and G. K. Thompson, Cedar Rapids, for appellant.

Paul H. Kinion, Cedar Rapids, for appellee.

STUART, Justice.

Mrs. Forsyth instituted this action for divorce. Her husband filed a cross-petition. The trial court granted her a divorce and awarded her custody of their two children, a girl, 9 and a boy, 6. Mr. Forsyth has appealed claiming the equities are with him and that he, rather than plaintiff, should have been given the divorce and custody of the children. No written or oral arguments were presented on behalf of appellee. We are also handicapped in our review by the lack of findings of fact in the trial court's decision. We have thoroughly examined the record in an effort to reach the proper result under our de novo review.

■ I. We cannot affirm the trial court's award of a divorce to plaintiff. We have always required some proof that the spouse's conduct endangered the health and life of the party seeking a divorce. Beno v. Beno, 260 Iowa 442, 445, 149 N.W.2d 778, 780. Such proof is not only lacking here, but the record affirmatively shows to the contrary. None of plaintiff's corroborative witnesses testified as to her health. No attempt was made to connect plaintiff's mental problems, which will be mentioned later, to defendant's conduct. The only evidence relating to the effect of Mr. Forsyth's conduct on plaintiff's health is as follows:

"Q. Has this treatment, this condition you have been living under, Mrs. Forsyth, affected your health at all? A. The post-partum depression which I went through after Walter was born, I believe was precipitated by a visit from his parents the week after I came home from the hospital. * * *

"Q. Just being around Wayne, does that bother you? A. No."

As there was no evidence defendant's conduct affected plaintiff's health or endangered her life, she failed to prove one of the necessary elements for a divorce on the ground of cruel and inhuman treatment.

■ II. We must now examine the evidence to determine whether defendant was entitled to a divorce.

These parties seem to have been uniquely unsuited for each other. Plaintiff recognized this when she wrote: "Wayne is too much of a damnyankee to suit me. I'm pure rebel—always have been. He's straitlaced, devious, positive of himself and altogether too stubborn. Opposites attract, but do they cling together forever and ever? They meet and go their separate ways, according to the laws of nature." Her evidence establishes nothing but incompatability.

Plaintiff was 29 and defendant was 26 when they were married in 1958. She graduated from high school with secretarial training. He graduated from Virginia Military Institute with a B.S. in chemistry. She was a Catholic; he was Presbyterian. Neither would accept the other's religious beliefs and at her suggestion they turned to the Lutheran Church as a compromise.

When they were first married they lived in Pennsylvania. In 1960 they moved to North Carolina. There defendant invested their savings in a pizza restaurant which failed and left them several thousand dollars in debt. They have been living under a tight budget controlled by defendant who has been paying off these obligations rather than take bankruptcy. He accepted a position with Penick and Ford in Cedar Rapids and moved to Iowa in June 1966.

We believe the record supports the following complaints of the defendant against his wife, most of which are corroborated either by the wife's admissions, with some explanations, or other evidence.

1. Plaintiff neglected her household duties when defendant was home. Defendant asserts he made the beds most of the time and did the cooking and ironing over half the time.

2. Plaintiff made false accusations of defendant's improper relations with various other women.

3. Plaintiff has refused to have sexual relation with defendant since a few weeks prior to the birth of their son.

4. She has threatened to take defendant's life and has on numerous occasions thrown objects at defendant in front of the children. She does not deny making the threats but states they were done in anger and not with any serious intention. She says the objects thrown were *mostly* teatowels.

5. To harass defendant, she has hidden papers, typewriters, and other items used in his work.

6. On one occasion she called the police to their home without any reason.

7. She threatened to cause defendant to lose his employment and did contact his employer with complaints about his conduct.

8. On occasions she took the children from the home overnight or longer without advising defendant of this intention or telling him where they were going.

9. She refused to come to Cedar Rapids with defendant when he accepted a better position and for two months would not permit their home in North Carolina to be sold. When he stated he would no longer support her, the home was sold in three days.

10. On one occasion when she was trying to quit smoking, she accused defendant of taking her last carton of cigarettes. He denied knowing anything about it. She hid some of his important business papers. When he called neighbors trying to locate them, she took a flashlight and got some pruning shears and attacked him with them. She does not deny the incident, but claims she hit him with the flashlight rather than the shears. This resulted in a charge of assault and battery to which she pleaded guilty.

Twice in North Carolina and once in Iowa plaintiff was sent to mental hospitals for evaluation. In the first two instances it was determined she needed hospitalization for the protection of herself and others. The evaluation from Independence determined she was not psychotic. With the possible exception of the effect of the tranquilizers on her housework and care of the children, it is not claimed her conduct was the result of mental illness.

Defendant and a corroborating witness testified as to the effect of plaintiff's conduct on his health. This evidence together with undenied testimony that he kept his bedroom door locked at night, indicated fear for his health and safety. We believe there was sufficient evidence this conduct on plaintiff's part did affect defendant's health and endanger his life.

Although very few divorce cases are one-sided and defendant's straitlaced attitude, strict control of the finances and demands for order probably aggravated plaintiff, they do not furnish grounds for divorce in Iowa. There is no evidence defendant physically or verbally abused plaintiff or

**114**

made insulting remarks about her. He apparently reacted by taking on the responsibility of doing the things around the home he felt should be done when they were not done by plaintiff. We believe the equities are with defendant and he should have been granted a divorce from plaintiff.

III. We are now confronted with the unpleasant duty of determining the custody of the children. There is no doubt that both these parents love the children and both are morally fit to care for them.

 The governing principle is the best interest of the children. Lovett v. Lovett, Iowa, 164 N.W.2d 793, 802. It is generally assumed the best interest of younger children is served by placing them in their mother's custody. However, this is an inference rather than a legal presumption and as such readily yields to evidence tending to show otherwise. Harwell v. Harwell, 253 Iowa 413, 418, 112 N.W.2d 868, 872; Andreesen v. Andreesen, 252 Iowa 1152, 1156–1157, 110 N.W.2d 275, 277–278; Patzner v. Patzner, 250 Iowa 155, 159, 162, 93 N.W.2d 55, 59; Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1086, 65 N.W.2d 366, 369; Maron v. Maron, 238 Iowa 587, 592, 28 N.W.2d 17, 19–20.

The inference is based at least partly on the assumption that the mother keeps the home, performs the household duties and will have more time to devote to the children and their welfare. Where, as here, both the mother and the father work and plan to hire a housekeeper and the evidence shows the husband performed a large share of the household duties ordinarily performed by a mother; spent much free time with the children; supervised their religious training; saw that the little girl belonged to the Campfire Girls and Girl Scouts and fixed a potluck dinner for her to take to a meeting; supervised her studying; frequently purchased the groceries; and on occasions bought, hemmed, repaired and ironed the children's clothing; the evidence discloses such inference would not be proper.

 We believe the record indicates Mr. Forsyth's life revolves around his work and the children and that it would be to their best interest if he were given their custody. Liberal visitation rights should be provided for Mrs. Forsyth. As we have no way of knowing the present circumstances, the visitation rights should be set by the trial court after further hearing. The property settlement made by the trial court is approved and the child support provisions are cancelled.

We therefore reverse the trial court and remand the case to the district court for further hearing on visitation rights and decree in accordance herewith.

Reversed and remanded.

GARFIELD, C. J., and SNELL, MOORE and MASON, JJ., concur.

RAWLINGS and BECKER, JJ., concur in result.

LeGRAND and LARSON, JJ., dissent.