In re the MARRIAGE OF Vance H. JEN-
NERJOHN and Arlene A. Jennerjohn.

Upon the Petition of Vance H. JENNER-
JOHN, Appellee,

v.

and Concerning Arlene A. JENNERJOHN,
Appellant.

No. 55513.

Supreme Court of Iowa.

Dec. 20, 1972.

McLaughlin & Beckmann, Anamosa, for appellant.

E. Michael Carr, Manchester, for appellee.

MASON, Justice.

Arlene A. Jennerjohn, respondent-wife, appeals from decree entered in dissolution of marriage proceedings under the provisions of what is now chapter 598, The Code, 1971. Under this statute the sole basis for termination of the marital relationship is the breakdown of the marriage to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. In Re Williams, 199 N.W.2d 339 (Iowa 1972).

Petitioner, Vance H. Jennerjohn, instituted the present proceedings September 8, 1970, asking dissolution of the marriage, custody of the children and distribution of the property having an estimated value of $12,000 plus one-half of growing crops. September 18 respondent filed an answer and an application for conciliation, also seeking custody of the children should the marriage be dissolved. October 6 respondent-wife filed a petition seeking temporary support, custody of the children and an injunction prohibiting petitioner from disposing of the property of the parties.

October 9, the court entered an order on conciliation appointing the Reverend Donald Groskrautz of Dubuque as conciliator "with a view to securing marriage counseling and advice to the end that their marital differences may be conciliated." Section 598.16, The Code. The same day the court further ordered petitioner to pay the clerk of court $250 toward respondent's legal expenses in the proceeding and issued a temporary injunction restraining petitioner from disposing of any of the moneys or property of either party.

March 29, 1971, in accordance with the parties' stipulation for psychiatric examination, the court ordered both petitioner and respondent to undergo a complete

psychiatric examination and evaluation at the Northeast Iowa Mental Health Institute.

In its decree filed November 12, the court held there had been a breakdown of the marriage relationship to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be preserved. Section 598.11, The Code.

The court decreed dissolution of the marriage, awarded custody of the two minor children to petitioner and made "an equitable distribution" of the property of the parties valued at approximately $12,000.

Respondent does not assign as error that portion of the decree ordering the dissolution of the marriage, even though she desired there be no dissolution of the marital relationship.

Respondent and petitioner were married in Manchester, Iowa, in December 1950. Petitioner was 42 years of age and respondent, 38 years old at time of trial. Since their marriage the parties have lived on a 180-acre farm owned by petitioner's mother.

Four children were born as the issue of this marriage. The custody of only two, Cheryl Lynn born August 1, 1961 and Michael Dean born November 9, 1965, is an issue in this appeal. The other children, Dennis Albert and Steven Harold, students at the Iowa State University at time of trial, were both on scholarships and free of any financial assistance from their parents except for room and board during the summer months.

Because of a "50–50" lease with his mother, petitioner owns a half interest in the livestock, grain and future crops. He owns the machinery listed in exhibit 1 on page 92 of the record and a 1961 Chevrolet pickup. The parties also have a 1965 Buick registered in both names.

Before 1969, petitioner had been milking over 30 cows. In 1969, however, he sustained a severe injury to his leg in a farm accident requiring him to be on crutches for 6 to 8 months. Consequently, he discontinued the dairy operation and went to a beef cattle feeding operation which was less profitable. With his improved health he recently began converting back to the dairy operation, although he intends to limit his herd to 12 to 15 cows because of the permanent disability resulting from the farm accident. He believes that 12 to 15 milk cows "will generate $3000 to $4000 in gross cash income."

Petitioner stated his wife was "in good health." During the first eight or nine years of marriage respondent assisted him with the farm chores and other work. Respondent testified that after the daughter was born she confined her work outdoors to the garden and milking operations.

Following the advice of petitioner and the marriage counselor, respondent worked 30 to 50 hours a week for $1.00 per hour at a Dairy Sweet. At time of trial she was employed part time at the Lutheran Home in Strawberry Point, working from 7 a. m. to 3 p. m., three to five days a week. Respondent has no special skill or training that would permit her to secure other than menial employment. She stated she had "no training to go out and adequately support herself and the children."

Petitioner testified he had about $2900 in a farm account, $200 in U. S. Bonds given the parties by his parents and about $1000 in a joint checking account. Respondent had no separate funds of her own. There is no indebtedness.

Petitioner estimates his net worth to be between $10,000 and $15,000.

Respondent appeals from that portion of the decree relating to the custody of the children, property settlement and denial of attorney fees.

In seeking reversal Mrs. Jennerjohn asserts the evidence did not warrant the trial court's judgment: (1) in awarding custody of Cheryl Lynn and Michael to petitioner; (2) in failing to provide alimony

payments in monthly installments and make a fair and equitable division of property including a reasonable share of the household goods and furnishings; and (3) in failing to award respondent attorney fees for services rendered her in these proceedings.

■ In an equity matter, such as this, our review is de novo. Rule 334, Rules of Civil Procedure. It is our responsibility to review the whole record and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. In Re Marriage of Williams, 199 N.W.2d 339, 346 (Iowa 1972); In Re McDonald, 201 N.W.2d 447, 453 (Iowa 1972).

■ I. In child custody cases the first and governing consideration of the courts must be the best interest of the child. Rule 344(f)(15), R.C.P.

Respondent contends the trial court's decision awarding custody of Cheryl and Michael to petitioner is not based on any findings of fact such custody was for the best interest and welfare of these children but on the basis petitioner was to retain possession of the farm home and furniture. That is, the award of custody is predicated on the distribution of property and not the best interest of the children.

■ This court adheres to no hard and fast rule as to which parent should be awarded custody of the parties' children, and each case should be decided on its own facts. Kayser v. Kayser, 164 N.W.2d 95, 103 (Iowa 1969).

We have said, "a brother and sister should not be separated and lose the benefit of constant association with one another except where circumstances require it." McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, 154.

Respondent argues both parents are equally fit to care for the children. Hence, she should receive custody in accordance with the principle that it is generally assumed the best interest of younger children is served by placing them in their mother's custody.

This statement from Miller v. Miller, 202 N.W.2d 105 (filed November 15, 1972), is pertinent to the problem presented by this contention:

"Plaintiff leans heavily on the so-called assumption that the interests of small children are better served by awarding their custody to the mother. As pointed out in Raabe v. Raabe, supra, 191 N.W.2d [551] 553, this is more properly an inference rather than a 'fixed presumption.'

"While we still pay some homage to this principle, it must be conceded our recent cases have diluted its strength.

"In Raabe v. Raabe, supra, 191 N.W.2d 553, we said:

" 'We have recognized there is no hard and fast rule as to which parent or other person should be awarded child's custody, and each case should be decided on its own facts. Kayser v. Kayser, 164 N.W. 2d 95 (Iowa 1969). We have also said that in all cases motherhood is a factor to be given weight in deciding questions of child custody. * * * '

"In Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970), we put it this way:

" '[T]hough it be assumed that the best interest of younger children is served by placing him in a mother's care that is but an inference which yields to evidence tending to show otherwise.'

"In Harwell v. Harwell, 253 Iowa 413, 418, 112 N.W.2d 868, 872 (1962), we said the presumption is not strong and yields readily to other considerations.

"Cramer v. Cramer, 185 N.W.2d 787, 790 (Iowa 1971), describes the presumption as 'admittedly not strong, but still extant.'

"Forsyth v. Forysth, 172 N.W.2d 111, 114 (Iowa 1969), says this inference 'yields readily to evidence tending to show otherwise.'

"After all is said and done and after everything else is considered, we must always return to the basic tenant which overrides all else—the best interests of the children."

The relevant portion of the court's findings of fact is as follows:

"10. Petitioner is a good father to the two minor children, Cheryl and Michael and is respected and loved by them and is capable of providing them with the care and attention they require.

"11. * * *

"12. The children Cheryl and Michael are comfortable in their present surroundings and petitioner seems to be able to provide them with proper care and attention supplemented by occasional domestic help.

"13. Respondent, though expressing a love and affection for the children of the parties, tenders no plan or arrangement for their care away from the present home and it is not practical to require Petitioner to vacate the farm and permit Respondent to remain there particularly in view of the relationship between Petitioner and the landlord, [his mother]."

Petitioner testified to the effect respondent had not been a good mother, primarily because of her reluctance to have the children receive medical treatment. He believed respondent regulated their meal plans and other household activities in accordance with her horoscope, again to the detriment of the children. He also criticized Mrs. Jennerjohn for not taking a more active part in their social life both within and without the home and accused her of concocting "three more reasons than the kids have for not going to school." He testified respondent never expressed her

love to the children before he instituted the present proceeding and even had told the daughter, Cheryl, that she did not love her.

Although critical of her husband in other respects, respondent testified petitioner had been a good father to the children and got along well with them. She denied he would be capable of caring for the children alone. She believes dentists, not doctors, "try to take advantage of you." Respondent had made no arrangements to care for the children if she were awarded custody and could not independently support them financially. Though she intended to continue her work at the Lutheran Home, she would prefer to remain at home with the children rather than arrange for babysitters.

Petitioner assured the court if he were given custody of the children, he could provide them with clothing, a comfortable home, adequate meals, proper medical attention and, if necessary, arrange for someone to help with the washing, cooking and sewing one or two days a week.

Dennis Jennerjohn, the eldest son, testified the younger children enjoyed being with their father and were always anxious to accompany him whenever he left the farm. He did not consider respondent a loving and responsible mother.

Petitioner called Everit Batchelder and Ronald Kehrli as witnesses. Both men, who had known the parties for 11 years and 25 years respectively, testified petitioner was a capable father and that a love relationship existed between him and the children. They were critical of respondent's frequent reference to her horoscope.

The conciliator, Reverend Groskrautz, reported Cheryl expressed a desire to remain with her father if her parents were divorced. He also concluded "one gets the definite impression that a good deal of responsible care has been invested in all of the children."

The examining psychiatrist, Dr. Chester F. McClure, found both parties pleasant

and easy to converse with when interviewed separately. In his report he stated: "The psychological testings confirmed my opinion that both of these people are of average intelligence with the wife slightly above average. * * * In observation, and psychological testing of this couple, it appeared that the husband is a little more realistic, has better judgment and more common sense. The wife on the other hand, tends to be quite naive, idealistic and thinks in terms of magic solutions to her problems.

"In an over-all evaluation of this couple, it would appear that the husband has a slight edge over the wife in his ability to meet the needs of the children, if and when a dissolution of marriage takes place. However, either of these people would be a better parent than the two of them are together. Because we have not seen the children in relationship to the couple and what interaction takes place, it would be advisable to obtain a social worker's evaluation of the relationships in the actual home setting before a final determination of custody is made."

Petitioner's counsel responds with questionable candor that respondent "is strange and weird." As support for the court's determination he have custody of the children, petitioner refers the court specifically to Forsyth v. Forsyth, 172 N.W.2d 111, 114 (Iowa 1969) and Fritz v. Fritz, 260 Iowa 409, 419, 148 N.W.2d 392, 397–398.

In Forsyth, the court awarded custody to the father, but the evidence showed the husband performed a large share of the household duties ordinarily performed by a mother; spent much free time with the children; supervised their religious training; saw that the little girl belonged to the Campfire Girls and Girl Scouts; supervised her studying; frequently purchased the groceries, and on occasion bought, hemmed, repaired and ironed the children's clothing. The court concluded: "We believe the record indicates Mr. Forsyth's life revolves around his work and the chil-

dren and that it would be to their best interest if he were given their custody."

In Fritz, the court made the following observations:

"The record in the case before us paints an undisputed picture of a mother who, regardless of any sincerity of purpose or feeling of love for her children, is beset with a moral and functional weakness which has not only wrecked her marriage but indicates she may be incapable of giving these children the care, attention and guidance which they should have. It is clear her conduct in their presence, her immorality without remorse, her admitted inability to maintain a tolerant and balanced relationship with her husband, plus her failure to detect the evils present in allowing her children to drink beer and liquor, must be considered significant in determining what is best for their future welfare.

" * * *

"On the other hand, it appears that the father is a man of sound judgment, patient beyond belief, abounding in energies and capabilities for earning a living and providing comfortable housing for his children."

Evidence of the mother's indiscretion and inability to properly care for the children is far less convincing in the case at bar. Many of petitioner's criticisms are superficial and point out no apparent evidence of harm to the children's well being. Respondent purchases the groceries, prepares most of the meals and cleans the home, but apparently not to petitioner's satisfaction. There is no evidence of intoxication, lewd and lascivious behavior or other conduct likely to be detrimental to the health or morals of the children.

In connection with the court's finding that Mrs. Jennerjohn tendered no plan or arrangement for care of the children away from the present home, we call attention to the fact respondent in answer to the petition for dissolution had denied there had been a breakdown of the marital rela-

tionship and had alleged that conciliation procedures would result in saving the marriage.

Insofar as we have been able to determine, the Iowa dissolution of marriage procedure is the only one adopting the no-fault concept as a standard for termination of marriages which·has incorporated a provision requiring conciliation proceedings. Section 598.16. In Re Marriage of Boyd, 200 N.W.2d 845, 851 (Iowa 1972).

This statement appears in *Boyd*:

"The opinion has been expressed that the legislative purpose of enacting such provision was to foster viable marriage relationships and minimize the problem of hasty divorces."

In line with this legislative purpose parties to a dissolution proceedings are expected to make a good faith effort to explore the possibility of saving the marital relationship by participating in the conciliation procedures. Respondent had made a sincere effort to abide by the recommendations of the conciliator.

She testified, "I think with patience and prayer and time and maybe some social help we can work our problems out and our children would have a better home for it and we would probably be stronger, Vance and I than divorcing. I think the marriage can be preserved and I pray for it."

It is understandable why respondent had made no definite plans for the care of the children in view of her hope to save her marriage and in light of the continued cohabitation of the parties up to the time of trial, as shown by the record. However, respondent said she could arrange for babysitters if she were to work but preferred to be with her children instead of having babysitters take care of them.

This brings us to respondent's contention the award of custody was predicated on the distribution of property and not the best interests of the children.

After finding it was essential petitioner remain on his mother's farm and retain the machinery and livestock in order to continue the farm operation, the court awarded petitioner "the machinery, grain, livestock, 1961 Chevrolet pickup truck and household furniture presently located upon the farmstead."

On the other hand, respondent was awarded the 1965 Buick, her personal effects and $6000, payable $1000 within 30 days from the date of the decree with the balance in 50 monthly installments of $100 each. The deferred payments not overdue were to draw no interest.

We realize, as the trial court did, it is not permissible to require petitioner to vacate his mother's farm and permit respondent to remain there. Nevertheless, an award of custody must be based on a determination of what is in the best interests of the child and is not to be controlled by the distribution of property made by the court.

We hold in a dissolution proceedings resulting in termination of the marital relationship where the court is called upon to determine custody of children of the marriage, it may and should take into consideration in determining the best interest of those children material advantages arising from an award to one parent or the other. However, the relative financial status of the parties is not a controlling factor since poverty alone has never been accepted as a sound basis for declining to give either parent the custody and control of the issue of the marriage, providing they are otherwise equipped therefor and the child's welfare would not be jeopardized. Sowders v. Sowders, 286 Ky. 269, 150 S.W.2d 903, 907; Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S.W.2d 604, 607; Hannon v. Eisler, 270 Wis. 469, 71 N.W.2d 376, 384; 27B C.J.S. Divorce § 309(7); 24 Am.Jur.2d, Divorce and Separation, section 783.

We have weighed the benefits of Cheryl and Michael ·being with their moth-

er and given them consideration along with the detriments. Bearing in mind that in a situation where other factors hang in balance, as here, motherhood is a factor to be considered in a custody award, Raabe v. Raabe, 191 N.W.2d 551, 553, we conclude as triers of the fact anew that under the circumstances presented the best interests and welfare of these children would be best served by awarding their custody to their mother, respondent.

Of course, this determination means the trial court's decree must be amended by a provision fixing the extent of petitioner's obligation to contribute to the support and maintenance of Cheryl and Michael. Because of lack of evidence in the record, we are unable to do this. For this reason the matter must be resolved, in the first instance, by the trial court after hearing on remand as hereinafter ordered.

II. In support of her second proposition assigned, respondent contends that in addition to the provisions made for her in the decree she should be awarded regular monthly alimony payments during her lifetime until remarriage and a reasonable share of the household goods and furnishings.

Section 598.21, The Code, provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient."

We have mentioned in division I, supra, the award made for respondent. This court reviews the trial court's distribution of the property in the light of our decision in In Re Williams, supra, and those permissible factors now remaining in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968).

Although not raised by respondent in her brief, it should be noted that an examina-

tion of the record has revealed no indication the trial court gave any consideration to the fault concept in determining the division of property.

As in most cases of this type there is not the money or financial ability to meet all that might be required to make an ideal situation.

"It is well established in this jurisdiction that in determining the amount of alimony to which the wife may be entitled, it is not only the wife's necessity, but also the husband's ability to pay, that the court must consider. * * *." Kjar v. Kjar, 261 Iowa 334, 336, 154 N.W.2d 123, 125.

We have an idea of the petitioner's ability to pay but the record leaves much to be desired in the way of informing us as to respondent's needs.

At the time of trial respondent was employed at the Lutheran Home in Strawberry Point earning $1.60 per hour, working three to five days a week. She had requested a five-day work week feeling she would still be able to take care of her home and the children if her health would "take it." However, we are not told in the record how many days a week she was working at the time of trial.

We conclude in light of the record the decree should be also amended by requiring petitioner to pay, in addition to the $6000 designated as "alimony" in the trial court's decree, a further sum of $50 per month commencing 30 days from the filing of this opinion and continuing thereafter in like monthly installments during the lifetime of both parties and so long as respondent remains single. The award of $6000 "alimony" and the schedule of payment thereof as well as the award of the Buick and respondent's personal effects is affirmed.

We are not advised as to the amount of furniture the parties had accumulated during their married life or what is available for distribution. In any event, respondent must be awarded sufficient household goods and furniture to enable her to furnish to

some extent a place of residence for herself and the children. This is another matter which the trial court will have to determine after hearing on remand.

III. Respondent was allowed $250 as temporary attorney fees. In her remaining proposition she asks for a further allowance of fees for services rendered in the trial court and for services provided on this appeal. The trial court made no award of additional attorney fees for services performed in that court but considered the same included within the property distribution.

The dissolution proceedings were commenced by the husband seeking termination of the marriage, custody of the children and distribution of the property. The wife was required to defend. See Lovett v. Lovett, 164 N.W.2d 793, 803–804 (Iowa 1969).

■ A determination of reasonable attorney fees must include, but is not limited to, a consideration of these elements: (1) the amount of time spent; (2) nature, extent and difficulty of the services; (3) amount involved; (4) responsibility assumed; (5) results obtained; (6) customary charges for similar services; and (7) the professional standing and experience of the attorney. In Re Marriage of Jayne, 200 N.W.2d 532, 534 (Iowa 1972) and authorities cited.

■ Respondent should be allowed an additional $250 as fees for services rendered her in the trial court. Judgment shall be entered in the trial court against petitioner for this allowance.

Respondent's application for attorney fees for services on this appeal was submitted with the appeal. Respondent's counsel has filed an itemized statement showing the dates and times involved for those services. It is apparent counsel has spent a great deal of time preparing this appeal.

Without in any way attempting to place a valuation on those services or what counsel should be paid, we simply determine what portion thereof should be paid by petitioner. We repeat we are also limited by the assets and financial ability of the petitioner to pay. Respondent should be allowed an additional $750 toward her attorney fees for services on this appeal. Judgment shall be entered in the trial court for this additional amount.

IV. As stated, because of want of evidence before us, this matter must be remanded to the trial court for the taking of evidence bearing on petitioner's obligation to contribute to the support and maintenance of Cheryl and Michael and on proper distribution of the household goods and furnishings accumulated by the parties.

Upon issuance of the procedendo, rule 351, Rules of Civil Procedure, respondent shall make application to the trial court for an order fixing the time and place of hearing on these matters, prescribing the form of notice to be given petitioner and the manner of service thereof.

Following such hearing the trial court shall fix the extent of petitioner's duty to contribute to the support and maintenance of Cheryl and Michael, his visitation rights with these children; make distribution of the household goods and furnishings in accordance with this decision; and enter judgment for respondent's attorney fees as herein prescribed.

The portion of the trial court's decree awarding custody of Cheryl and Michael to petitioner is set aside and the case remanded for further hearing and entry of a decree consistent with this opinion.

The case is therefore—reversed and remanded with directions.

All Justices concur except REYNOLDSON, UHLENHOPP, HARRIS and McCORMICK, JJ., who dissent.

REYNOLDSON, Justice (dissenting).

Cases involving custody and severance of parent-child relationships always invoke the most agonizing decisions undertaken by this

court. Usually, as here, there is something to be said for each of the solutions advanced while neither is entirely satisfactory. In this case a study of the record leads me to conclude the trial judge, who heard the witnesses, reached the best result available in an unfortunate situation. I must therefore respectfully dissent.

I have no disagreement with the principles of law set out in the majority opinion. While agreeing with majority that custody of children should not turn on the financial status of the contesting parents, I do not concede this was the governing consideration below.

Sometimes a single trial-developed fact, like an iceberg's tip, signals an unseen but impending disaster. Here such signal is found in the undisputed evidence this mother on numerous occasions told her daughter, Cheryl, that she didn't love her and wished she'd never been born. No mother, however distraught, who had consideration for the emotional well-being of her child, could be guilty of such conduct.

Respondent admitted she yelled at the children when she was "up tight." She further testified,

> "I feel that Vance has been a good father to the children. He is not capable of taking care of the children alone. Vance lets the children get pretty loud before he finally clamps down but when he clamps down they know he means it. I know he loves the children. * * * The children do not want to leave the farm."

The youngest son, Michael, has not yet received immunization "shots" against childhood diseases because of respondent's attitude. Her reason was, "It's up to the family to decide and Mike didn't want them when he got to be five years old." Distrust of dentists, noted by majority, resulted in actual neglect of the children's dental health. Respondent testified, "I feel dentists try to take advantage of you. They are in your mouth. You don't know what they are doing."

Even respondent's sister was evasive when asked if custody of these two minor children should be awarded to respondent. She finally said, "It would be better for Arlene to have them because it would be better for her." This court has steadfastly held the best interests of the children should be the polestar in these cases, not therapy for one of the parents.

Dennis, a 20-year old son, was working his way through Iowa State University with the aid of a scholarship at time of trial. As a junior, his cumulative grade point average was 2.717 on a scale of three. His logical and well-reasoned testimony corroborated the facts recited above and illuminated respondent's emotional instability.

Lastly, district court had before it the report of Dr. Chester F. McClure, M.D., of Northeast Iowa Mental Health Center. Evidence adduced at trial substantiated the following portion of that report:

> "In observation, and psychological testing of this couple, it appeared that the husband is a little more realistic, has better judgment and more common sense. The wife on the other hand, tends to be quite naive, idealistic and thinks in terms of magic solutions to her problems.
>
> "In an over-all evaluation of this couple, it would appear that the husband has a slight edge over the wife in his ability to meet the needs of the children, if and when a dissolution of the marriage takes place."

I would affirm the decision below.

UHLENHOPP, HARRIS and McCORMICK, JJ., join in this dissent.