In re the MARRIAGE OF Constance M. BINGMAN and Delbert R. Bingman.

Upon the Petition of Delbert F. BINGMAN, Appellant, and Concerning Constance M. BINGMAN, Appellee.

No. 55956.

Supreme Court of Iowa.

July 3, 1973.

McCracken & Carlin, Davenport, for appellant.

Edward N. Wehr, Davenport, for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

This dissolution case presents questions of custody, awards, support, alimony and allowances. No question is presented as to the dissolution itself. We affirm.

The parties were married September 3, 1955 and have two children, Jeri, now 14, and Micki, now 7. Petitioner has shown considerable talent and industry in the insurance business. Respondent has been a full time wife, mother and homemaker, a calling which has severely taxed her by reason of the extreme mental retardation of Micki, the younger child.

Micki's condition is very tragic. At trial respondent expressed the hope she would be able to walk in another ten years. She crawls around the house but there is little hope she will ever be able to talk. She is not toilet trained. Although her mother tries to be optimistic she concedes Micki's future prospects are bleak.

There was some dispute over the condition of Jeri. It was discovered in 1970 Jeri had one leg shorter than the other. Corrective surgery was undertaken in October of 1971 from which recovery was marked by delayed healing. The orthopedic surgeon treating Jeri observed what he considered to be emotional problems in that Jeri was withdrawn with no expressions of emotion. She was neither happy nor sad. He was concerned and recommended to the trial court Jeri should have psychiatric evaluation and guidance.

Respondent called as her witness a psychiatrist whom she had privately consulted for several years. In 1967 respondent had been suffering from a feeling of disassociation and loss of contact with her environment, coupled with a sensitivity to sound. An electroencephalograph disclosed temporal lobe epilepsy without seizure with disassociation spells. Respondent was placed on medication. Her psychiatrist believed she was thereafter able to function as a normal woman. Her condition would not prohibit her from being a fit or proper mother for the raising of children.

A fundamental problem arises from the presence of Micki in the home. Because of her pathetic condition she requires and receives extraordinary care from the family, especially from respondent. It is incumbent upon us, as it was upon the trial court, to consider the effect of this attention upon each member of the family. In addressing these questions petitioner sought an order from the trial court requiring respondent and Jeri to submit to psychiatric or psychological evaluation. The request was denied.

The trial court awarded custody of both girls to respondent and ordered payment of allowances which will be hereinafter described more fully. Petitioner assigns three errors for reversal. He argues he should have been awarded custody of Micki. He insists the trial court committed reversible error in refusing to order psychiatric or psychological examinations and evaluations of respondent and Jeri. Finally he argues the allowances are unjust and unwarranted.

There is no dispute as to the governing principles of law. The parties disagree only as to their application. In child custody cases the first and governing consideration of the courts must be the best interest of the child. Rule 344(f)(15), Rules of Civil Procedure. Our rule is de novo. Rule 344, R.C.P. We have said:

" * * * It is our responsibility to review the whole record and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. (Authorities)." In re Marriage

of Jennerjohn, 203 N.W.2d 237, 240 (Iowa 1972).

We adhere to no hard and fast rule as to which parent should be awarded custody of the children. Each case should be decided on its own facts. A brother and sister should not be separated and lose the benefit of constant association with one another except where circumstances require it. In cases where other factors hang in the balance, motherhood is a factor to be considered in a custody award. In re Marriage of Jennerjohn, supra.

■ I. At trial both parents sought custody of both children. Both expressed total opposition to institutionalizing Micki. Shifting grounds somewhat on appeal, petitioner claims it was error for the trial court to award both girls to their mother. He points to the provision in the decree providing alimony of $500 per month which is to continue so long as respondent personally cares for Micki in her home and while she remains unmarried and living singly. He argues:

"* * * One does not need to be a visionary to conceive of a situation where one would not want to be required to make an election as to whether to institutionalize a child, for the child's best interest, when such institutionalization would result in deprivation of a substantial income.

"Counsel for the petitioner does not mean to state that the respondent, if confronted with such a situation, would act in any manner detrimental to the child, but does wish to suggest that it would be best, not only for the respondent but the child as well, not to be confronted with such choice. It must be granted that a determination to institutionalize the child for his interest would be a difficult one to make, but it becomes more difficult when incumbered with a monetary consideration. Petitioner believes this should be avoided."

At trial petitioner himself was not in favor of considering institutionalizing Micki. He testified in some detail as to his plans

for providing for both girls and described his continuing concern for the welfare of Jeri because of her extreme involvement with the problems of her younger sister. He said:

"I would tend to try and steer her away from constant occupation with Mick (sic) and taking over the duties of a babysitter or care-taker of the younger child." Asked about his feelings about institutionalizing Micki he replied: "I am totally opposed to. Totally." He continued: "I don't think there is anything that an institution could do for Mick (sic) that I couldn't do. Very frankly I think there is, regardless of what the medical stand is, I think there is some form of communication even with a retarded child such as Micki and another person whom she knows loves her, and I don't think this would be present in an institution."

At trial the respondent eloquently expressed much the same sentiment:

"* * * I don't consider her a burden. * * * No, she is not a burden. She is a special child. When you are a mother of a retarded child it is hard to explain to a layman. I have had her ever since she was an infant. I live day by day with Micki. She makes minute progress but she does make progress and with every little progress we are happy. She is going to Opportunity Center. I do have these few hours during the day when she is away from me and somebody else is feeding her and diapering her. I don't consider her a burden ever."

Petitioner is on solid ground when he argues the mother should not be able to exploit Micki's condition, denying her needed care in order merely to compel continued alimony payments. Neither parent should be allowed to exploit Micki's tragedy to selfish ends. Petitioner's argument has a sound converse. The father should not be in a position to remove a seven year old child from her mother's home and care merely in order to terminate a heavy alimony burden. From our reading of the

record we sense no more reason to fear the mother's exploitation than the father's.

A bitter domestic dispute seldom leaves a pleasing picture of the parties involved. Yet a reading of the entire record discloses respondent to be a warm and affectionate mother. Her dedication to the children is the consuming force in her life. Her moral character is unchallenged. No serious question is presented as to respondent's fitness as a mother.

Petitioner, who certainly stands no higher than respondent as a fit parent, would have us remove Micki to his apartment. His justification for such a move is the separation of the two daughters, a separation he now argues is required in Jeri's best interests. Unless we take him to be insincere in expressing his total opposition to institutionalizing Micki, her rearing would be undertaken by hired help. We agree with respondent this is wholly unrealistic. The trial court was correct in awarding custody of both children to their mother.

II. Neither was it error for the trial court to refuse to order psychiatric or psychological examinations of the respondent and of Jeri. In considering this assignment it is to be remembered the application was by way of discovery in this suit. It is not determinative of whether this mother or daughter should or will have psychiatric or psychological treatment.

A trial court, by rule 132, R.C.P., is given discretion to order a physical or mental examination of a party where such a condition is in controversy in the action. Accordingly the trial court was authorized but not required to order such an examination for the respondent.

It was clearly no abuse of discretion to refuse to require the examination in this case. Respondent had undergone apparently successful psychiatric treatment. The court had the benefit of her psychiatrist's testimony and could properly refuse to require or order more.

We think a trial court has similar discretion in ordering parties to submit children affected by a dissolution for the same examination. In chapter 598, The Code, (Dissolution of Marriage) the legislature was careful to place exceptional safeguards for the protection of the minor children of the parties. There are provisions for their care and maintenance, even for the appointment of separate counsel to represent them (section 598.12, The Code). These protections are obviously aimed to further that governing consideration to which we have previously alluded: "In child custody cases the first and governing consideration of the courts must be the best interest of the child." Rule 344(f)(15), R.C.P.

In view of the efforts of the legislature to protect the interests of the children in a dissolution case and noting we have long accorded such children special status in divorce proceedings (see Davis v. Davis, 261 Iowa 992, 156 N.W.2d 870) we believe a trial court has discretion to order the parents to submit a child for such an examination. The entire tenor of the chapter is to provide the court with any information which might be helpful in determining the child's best interest. In a given case vital information might be available only upon such an examination.

It does not follow it was error to refuse the examination in this case. There were compelling reasons both supporting and opposing such an order. These reasons argued by the respective parties in support of and in opposition to this assignment, need not be outlined here. It is enough to say the trial court was not obliged to order it. The refusal had support in the respondent's fear of the effect of the examination upon Jeri, in her expressed desire to remove Jeri from the litigation, and in the opposition of both parties to institutionalizing Micki. It was not an abuse of discretion for the trial court to refuse to order the examination of Jeri.

III. Petitioner's final assignment complains of the allowances for child support,

alimony and attorney's fees. They were substantial but necessarily so. Under the circumstances we find them proper.

Petitioner was shown to have an annual earning capacity of $21,000. His interest in the business with which he is associated was worth $31,000. The parties owned two automobiles. They owed two bank notes totaling $3750.10 and bills of $3333.-18. They had recently purchased a residence valued at $49,000 which is subject to a $35,000 mortgage.

Respondent was given the residence and was directed to assume the mortgage payments and its tax and insurance obligations. She was given the furniture and household goods, the older automobile and her personal effects. Petitioner was given his interest in the business, his own bank accounts, the other automobile and his personal effects. This was a proper division of the property.

Petitioner complains he will be wholly unable to comply with the remainder of the order which directs him to pay all outstanding bills, including any obligations on the automobile awarded respondent. Petitioner is to maintain health and accident insurance policies on the minor children and is to pay $150 monthly for the support of each of the minor children. As to Jeri the payments are to continue until she reaches the age of 19 or becomes emancipated. As to Micki the payments shall continue so long as she remains handicapped and unable to care for herself. In addition the husband is to pay $500 monthly as alimony for so long as respondent maintains Micki in her home and while she remains unmarried and living singly. Petitioner was also ordered to pay $1500 for wife's attorney's fees plus $73.80 to reimburse respondent's counsel for deposition expenses.

Under the circumstances we think the allowances were proper. The $6000 annually to be paid in alimony has certain tax advantages to petitioner. Both parties resist institutionalizing Micki. It will be necessary for respondent to be at home with her at all times so she will be unable to seek outside employment. The $800 monthly total for child support and alimony is reasonable in comparison with the husband's income and is somewhat less than the amount paid over to respondent by petitioner for many years to maintain the home.

Petitioner strongly objects to the order which requires him to pay outstanding obligations which he estimates to be in the neighborhood of $12,000. He has failed to prove these obligations. $4915.67 of the amount was for advances made from his business but have already been reflected in a reduction by that amount of his interest therein. We are not convinced the $3314.10 he claims for bills incident to surgery for the elder daughter is an obligation which he will have to pay, noting he has regularly maintained health insurance. The requirement to pay the outstanding bills is reasonable. We approve too the $1500 allowed by the trial court for respondent's attorney. We are asked to fix respondent's attorney's fees on appeal. They are fixed in the sum of $1500 which amount petitioner is also ordered to pay.

We are not insensitive to the heavy financial burden this places on petitioner. At the same time we are also sensitive to the heavy burden to be borne by respondent. Any injustice to petitioner stems not from the trial court's decree, but from the tragic family circumstances shown in the record.

Affirmed.