**IN THE COURT OF APPEALS OF IOWA**

No. 15-0686
Filed April 6, 2016

**Upon the Petition of**
**DANIEL DAVID UPAH,**
    Petitioner-Appellee,

**And Concerning**
**MOLLI JO BRANDT,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Benton County, Christopher L. Bruns, Judge.

A mother appeals from the district court's order placing the child in the father's physical care. **AFFIRMED.**

Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

John G. Daufeldt of Daufeldt Law Firm, P.L.C., Conroy, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

Molli Brandt appeals from the district court's judgment and decree placing the parties' minor child, L.D.U., in the physical care of the child's father, Daniel Upah. Due to Daniel's stability and Molli's criminal history, we find that placing the child in Daniel's physical care is in the child's best interests. Therefore, we affirm the district court's ruling.

## I. Background Facts and Proceedings.

Molli and Daniel are the parents of L.D.U., born in August 2013. Molli and Daniel were never married, but resided together for a period of two years, during which time L.D.U. was born. A dispute arose in late 2013 when Daniel learned that Molli had taken approximately $17,000 from his checking account and had modified his bank statements to hide her conduct. Upon discovering the discrepancy, Daniel contacted the Benton County Attorney and a criminal prosecution was initiated.

On December 12, 2014, Molli entered an *Alford*[1] plea to a charge of class "D" felony forgery related to the monies taken from Daniel. At the time she entered the December 2014 plea, Molli was already on probation for a November 2011 felony-forgery plea. Molli had received a deferred judgment on the prior charge, but the deferred judgment was revoked as a result of her December 2014 plea. At the time of trial in this custody action, Molli remained on probation for these convictions, and had been ordered to pay $17,000 in restitution to Daniel.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

Molli and L.D.U. moved out of Daniel's residence in December 2013. After leaving Daniel's home, Molli lived with her mother in Illinois for one week, and then moved to her sister's residence in Toledo, Iowa, for a brief period of time. Molli subsequently obtained a two-bedroom apartment in Toledo, where she remained living at the time of trial. Molli works as the manager of a motel on a part-time basis for five hours per day, three to four days per week, earning eight dollars an hour. Molli earned $7352 from her employment in 2014, but expected to earn approximately $15,000 to $16,000 in the following year.

Daniel has worked as a farm laborer for the same employer for ten years. As part of his employment, Daniel is expected to live in a residence provided by his employer in Belle Plaine, Iowa. In addition to his work as a farm laborer, Daniel farms ninety acres and raises cattle with his father. Daniel testified at trial that he has worked long hours in the past, and at times will work up to seven days a week. However, Daniel also stated that his employer is supportive of his family responsibilities and is amenable to having Daniel work typical daily hours from eight a.m. to five p.m. In 2014 Daniel earned $36,672 from his employment, and received a net income of $703 from his additional farming endeavors.

Daniel filed a petition for custody on January 3, 2014, after his paternity was established by testing.[2] On March 7, 2014, the district court issued a temporary order granting Molli and Daniel shared physical custody on an alternating weekly schedule. Trial was held on the matters of custody, visitation,

---

[2] Although Daniel is listed as the father on L.D.U.'s birth certificate, there was a question as to Daniel's paternity after Molli told Daniel he was not L.D.U.'s father in late 2013.

and child support on April 1, 2015. The district court entered a judgment and decree on April 2, 2015.

The district court granted Molli and Daniel joint legal custody and placed physical care with Daniel. Molli was awarded visitation with L.D.U. for two weekends out of every three; two, two-week non-consecutive blocks during the summer months; one week during spring break; and alternating holidays. Molli was also ordered to pay monthly child support in the amount of $120.

Molli now appeals.

## II. Standard of Review.

We review physical care determinations under Iowa Code section 600B.40 (2013) de novo. *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). We give weight to the fact findings of the district court, especially upon consideration of witness credibility, but are not bound by them. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Riddle*, 500 N.W.2d 718, 719 (Iowa Ct. App. 1993).

## III. Discussion.

In cases involving custody or care determinations, the best interests of the child is the paramount consideration. *Phillips*, 541 N.W.2d at 847. Custody and visitation arrangements between parents who were never married are determined by the principles established in Iowa Code section 598.41. *See* Iowa Code § 600B.40. "The legal analysis employed in resolving a question concerning the custody of a child born of such a union is the same as that which

would have been utilized if the child's parents had been married and a dissolution of their marriage had resulted." *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988).

"The critical issue in determining the best interests of the child is which parent will do better in raising the child." *Riddle*, 500 N.W.2d at 719. "The objective of a physical care determination is to place children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

In determining the physical care placement that is in L.D.U.'s best interests, we consider the factors of Iowa Code section 598.41(3), as well as the factors provided in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (including, among other factors, the characteristics of each parent; the capacity of each parent to provide for the emotional, social, moral, material, and educational needs of the child; and the stability and wholesomeness of each proposed environment). Additionally, "stability and continuity of caregiving are important factors that must be considered in custody and care decisions." *Hansen*, 733 N.W.2d at 696. "Some factors are given greater weight than others, and the weight ultimately assigned to each factor depends on the particular facts of each case." *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998).

Neither Molli nor Daniel requested joint physical care, so we turn to Molli's claim for physical care. *See* Iowa Code § 598.41(5)(a).

Molli asserts that she is the more suitable parent because her working hours are more flexible than Daniel's and she is more supportive of Daniel in his

involvement as a father to L.D.U. She argues that there is no evidence to suggest that her financial status or criminal history will negatively affect her ability to parent L.D.U or result in a lack of stability. She contends that the district court did not properly consider the best-interests factors when reaching its decision, and that the court "appear[ed] to essentially 'take sides' with Daniel." In particular, Molli argues and cites with authority the fact that the economic status of a parent is not a sound basis for deciding which parent should be awarded physical care.

The district court found placing physical care of L.D.U. with Daniel would be in the child's best interests. With respect to Molli, the court explained:

> The court finds that Molli is currently under-employed. She has the capacity to work full-time at a wage close to minimum wage. . . .
> Because Molli does not currently work full-time, she argues she has more time to spend with L.D.U. Although that is true in a sense, the court finds that Molli should be working full-time. She has not only obligations for support of L.D.U. and herself, but obligations to pay restitution in at least one criminal case. Further, unless Molli works more than 15 to 20 hours per week, even with child support, she would have a very precarious economic situation. . . .
> The court is not convinced this is an optimal arrangement for a young child because young children generally do best with structure and routine. In evaluating whether joint physical care is appropriate, the court must consider stability and continuity. The court finds that any care arrangement that would leave L.D.U. with Molli for the majority of the time or even for extensive periods of time would lack stability and continuity.

Oppositely, as to Daniel, the district court found:

> Dan is a hard working farmhand/farmer. He has already begun the process of familiarizing L.D.U. with the farm and farm animals in an age appropriate way. He has clearly made arrangements to structure his work so that he can maximize his time with L.D.U. while also earning sufficient income to provide L.D.U. with support. He has a stable work history, a stable

residence, and ample support from family and even his employer. There was no evidence that he had any criminal record. Dan is and will be an excellent role model for his son, L.D.U.

Molli was once someone with a stable work history, but her criminal conduct has made it difficult for her to obtain good employment. She chooses to stay home with L.D.U. because, despite her financial obligations and questionable ability to make ends meet, she would rather not work. Molli is not as good a role model for L.D.U. as Dan.

The district court also determined that Daniel engaged in communication more frequently and effectively than Molli, and found Daniel to be a more credible witness.

Upon review of the record, we find no reason to diverge from the ultimate conclusion reached by the district court. We agree with Molli that her economic status was not a "sound basis" to determine the child's best interests or the award of physical care. *See In re Marriage of Jennerjohn*, 203 N.W.2d 237, 243 (Iowa 1972). Notwithstanding, the court properly considered a number of relevant factors and determined that Daniel is better positioned to provide for the emotional, social, moral, material, and educational needs of the child, and to provide a stable and wholesome environment, and our de novo review confirms the same.

Daniel has the capacity to give L.D.U. a stable home and structured schedule. Daniel also has greater familial support. Molli has a sister who lives nearby, but there is concern with her sister being left alone with the child due to past issues with the Iowa Department of Human Services. Additionally, the lack of geographic proximity between Molli and Daniel will make a shared physical custody arrangement impractical when L.D.U. reaches school age. The district

court granted Molli liberal visitation time, while maintaining a structured schedule for L.D.U. by placing physical care with Daniel.

We agree with the district court that physical care with Daniel will place L.D.U. in the environment most likely to bring him to health and social maturity. We therefore affirm the district court ruling awarding physical care to Daniel.

**AFFIRMED.**